**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward Grady PARTIN,
Defendant-Appellant.**

No. 77–3853.

United States Court of Appeals,
Ninth Circuit.

May 7, 1979.

Rehearing Denied Aug. 27, 1979.

Kevin J. McInerney, San Diego, Cal., for defendant-appellant.

Stephen A. Mayo, Asst. U. S. Atty., and Bruce R. Castetter, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Stephen A. Mayo, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before TRASK and WALLACE, Circuit Judges, and HOFFMAN, District Judge.*

WALTER E. HOFFMAN, District Judge:

Edward Grady Partin appealed his conviction of October 4, 1977 on three counts of conspiracy to obstruct justice in violation of 18 U.S.C. §§ 371 and 1503. We have jurisdiction of the appeal, 28 U.S.C. §§ 1291 and 1294.

Partin was indicted on October 4, 1973 in the Middle District of Louisiana on three counts of conspiracy to obstruct justice. The trial which is the subject of this appeal was Partin's third trial under this indictment and it was held in San Diego, Califor-

---

* Walter E. Hoffman, Senior United States District Judge, Eastern District of Virginia, sitting by designation.

nia, pursuant to Rule 21(a), F.R.Cr.P.[1] The indictment under which Partin was charged also charged eleven other persons, each of whom was named in only one count of the indictment. Two of Partin's codefendants were Harold Sykes and Ben Trantham, both of whom were named in Count II of the indictment.[2] The persons named in the indictment were not tried as one group; Partin was tried alone. Partin retained James McPherson as his attorney at his first and third trials. He was also represented in his San Diego trial by attorney Mitchell, who served as local counsel with McPherson and participated briefly throughout the trial. McPherson was likewise retained by Sykes,[3] Trantham and five other codefendants, representing them at their trials and in their appeals.

The indictment charged Partin and other codefendants with conspiracies to change the testimony of witnesses and to prevent witnesses from testifying in connection with two previous criminal cases in which Partin was a defendant. Partin was not convicted in either of those cases. The history of the earlier cases and the genesis of the indictment under which Partin now stands convicted are set forth in *United States v. Partin*, 552 F.2d 621 (5th Cir. 1977), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (reversing Partin's first conviction under the indictment because of an erroneous jury instruction which required only "slight evidence" to connect Partin with the conspiracy).

In May 1974, before any of the codefendants had come to trial, the government filed a motion requesting that the trial judge hold a hearing regarding the representation of eight of the codefendants by one attorney, James McPherson. McPherson had been retained by Partin and the codefendants; he was not appointed. The government was concerned with the possibility that this multiple representation could create a conflict of interest for McPherson and deprive defendants of their Sixth Amendment right to the assistance of counsel unimpaired by any conflict of interest. See: *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

Judge Nauman S. Scott, United States District Judge for the Western District of Louisiana,[4] held a hearing at which all of the codefendants and attorney McPherson, as well as Partin, were present. At the hearing Judge Scott questioned McPherson about his representation of multiple defendants. McPherson informed Judge Scott that he had discussed the case with his clients and was satisfied that there was no conflict of interest. McPherson also stated that he had discussed with his clients the possibility of unforeseen conflicts arising and that his clients still wished to be represented by him even though they understood there might be conflict of interest problems in that representation.

1. Partin's first two trials under this indictment were held in Louisiana. His first trial was in November 1974. It ended in a mistrial after one day. His second trial was in February and early March 1975 and resulted in a conviction on all three counts. On May 19, 1977, that conviction was reversed and the case remanded. *United States v. Partin*, 552 F.2d 621 (5th Cir. 1977). Partin was also thrice tried on a prior indictment which was later dismissed. These trials, resulting in a mistrial in Montana, a new trial granted in Georgia, and a conviction and reversal in Georgia, *United States v. Partin*, 493 F.2d 750 (5th Cir. 1974), brought about the dismissal.

2. Sykes and Trantham were first tried and convicted in August 1974. Their convictions were reversed and remanded on June 17, 1975.

*United States v. Marionneaux*, 514 F.2d 1244 (5th Cir. 1975). In July 1975, Sykes and Trantham were again tried and convicted. Their convictions were affirmed on appeal on May 19, 1977. *United States v. Partin*, 552 F.2d 621 (5th Cir. 1977). Sykes then petitioned for a writ of certiorari, which was denied on October 17, 1977, a few days after the present trial was concluded. *Partin v. United States*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977).

3. Sykes originally retained McPherson. After his first trial and appeal he ran out of money and McPherson was appointed to represent him. Trantham did not apply for certiorari.

4. Judge Scott presided at all three of Partin's trials.

After questioning McPherson, Judge Scott addressed the codefendants and advised them of the importance of their Sixth Amendment right to the effective assistance of counsel and specifically of their right to be represented by counsel who were free from any conflict of interest. He informed them of the potential problems of multiple representation and specifically of the problems created by one codefendant testifying against another codefendant. He advised them that if they could not afford separate counsel, the court would appoint counsel for them. He asked them if there were any questions; there were none. Judge Scott then told all defendants to contact the clerk of the court in Baton Rouge, Louisiana, if they wished to have counsel appointed for them.[5] No defendant responded to the invitation.

Partin's first trial was held on November 13, 1974. He was to be tried along with two other codefendants. However, a mistrial was declared after the first day of trial and the two codefendants were severed from Partin's trial.

Partin's second trial was held from February 17 to March 4, 1975 and resulted in a conviction on all three counts of the indictment. At this trial Partin did not retain attorney McPherson to represent him. One of Partin's codefendants, Ben Trantham, testified as a government witness against Partin at the trial. Trantham's testimony concerned Count II of the indictment. At the time Trantham testified he was appealing his conviction on Count II of the indictment.[6] He had been represented at his trial and, at the time he testified, he was being represented on appeal by McPherson. Partin's conviction was reversed by the Fifth Circuit on May 19, 1977. *United States v. Partin, supra.*

As mentioned above, Partin's third trial (presently before us) was held in San Diego

---

5. The pertinent portion of Judge Scott's advice to the codefendants stated in part:

Counsel whom you have retained in this matter; that is, Mr. McPherson and Mr. Atkins, have advised me that they have discussed the question of conflict of interest with you and that each of them is satisfied in his own professional judgment that there is no conflict of interest with respect to the charges against each of you and the defenses that might be asserted with regard to those charges. In addition, each has informed me that he has discussed with you the questions which may arise in the future and the possibility, although there appear to be no conflicts of interest now, it might develop at a later date that one or more of you may have different interests from the other. I do not mean to question the judgment of either of them in this regard, I do want, however, to advise you to think carefully about this matter, about what is in your own best interest and about your constitutional rights. Let us assume a different kind of charge. Let us assume that two people are charged with robbing a bank and are being tried jointly. Let's assume they are both being represented by the same lawyer. It might happen during the course of that trial that one of the persons charged with the crime might want to change his defenses in the middle of the trial. He might want to take the witness stand and testify that the other person in some way forced him to participate in the bank robbery. If that happened in the case of the two bank robbers, and if they were both represented by the same lawyer, obviously one would have a different interest from the other and the lawyer would have a conflict of interest. If one defendant could take the witness stand and begin to testify against his co-defendant he might end up being acquitted, but he would undoubtedly add to the evidence against the co-defendants. . . . I simply want to advise that if you think that you have a lawyer who has or may have a conflict of interest and if you wish to change counsel, the Court will appoint another counsel to represent you. Any person who is not able; that is, financially not able to afford a lawyer, can have a lawyer appointed for him without charge. . . . If however, you are satisfied with your present counsel and you are satisfied to run any risks that may hereafter develop of a possible conflict of interest, you certainly have the right to do this. . . . Now, if anyone has any questions they would like to ask me about this? All right . . . .

I would, however, say that if you wish other counsel I would like—well, I will give you a chance to think about it and if you wish other counsel, you may contact the Clerk of the Court here in Baton Rouge and make such a request on or before ten days from this date.

At the time Judge Scott set a ten-day time limit, it was anticipated that the various trials would be completed in a short period of time. As will be seen, *infra*, this time limit has no bearing on this appeal.

6. *See* note 2, *supra*.

as a result of a transfer motion. This trial was held from September 26 to October 4, 1977, and resulted in Partin's conviction on all three counts of the indictment. At this trial Partin retained attorney McPherson to represent him. Although McPherson's client Trantham did not testify at this trial, McPherson's client and Partin's former co-defendant Harold Sykes appeared as a government witness. At the time of his testimony at Partin's trial, Sykes had been convicted on Count II of the indictment and was being represented by McPherson on a petition for writ of certiorari to the United States Supreme Court.[7]

Partin raises a number of issues in his appeal, the first two of which are related to the appearance of his original codefendant, Harold Sykes, as a government witness at trial. In connection with Sykes' appearance Partin raises the following issues: (1) whether the government's contact with Sykes, which was done without the knowledge of Sykes' attorney, McPherson, was unethical and grounds for reversing Partin's conviction; (2) whether Partin's representation at trial by attorney McPherson, who also represented former codefendant/government witness Sykes, denied Partin his Sixth Amendment right to the effective assistance of counsel. The two other issues raised by Partin are (3) whether the jury instruction concerning the witness security program which was given during the course of trial, was prejudicial to Partin and, therefore, grounds for reversing his conviction; and (4) whether Judge Scott's refusal to recuse himself was error.

### Government Contact with Sykes

 Shortly after Sykes' conviction was affirmed by the Fifth Circuit, Sykes called Assistant United States Attorney Mayo, the prosecutor in charge of the trials of Partin and his codefendants. Sykes told Mayo that he wished to cooperate with the government because he believed that attorney McPherson considered Partin's interests to be paramount to his. Sykes requested that his cooperation be kept a secret because he feared for his safety if his cooperation became known. Subsequently, Sykes gave two statements to the FBI prior to Partin's trial. He signed a waiver of his right to counsel at the time he gave these statements. McPherson represented Sykes during this period of time. However, Mayo did not inform McPherson of his contact with Sykes or of the FBI interviews with Sykes. No attorney represented Sykes in his contacts with the government.

Appellant Partin argues that Assistant United States Attorney Mayo violated ABA Disciplinary Rule 7–104[8] in not notifying McPherson of his contacts with Sykes and that such an ethical violation is reversible error. We agree with appellant that Mayo's action violated Disciplinary Rule 7–104; however, the violation is not, on the facts of this case, reversible error.

Appellant correctly cites cases in this circuit in which we have condemned practices similar to that followed by Mayo. *See, e. g., United States v. Four Star*, 428 F.2d 1406, 1407 (9th Cir. 1970), *cert. denied*, 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253; *Reinke v. United States*, 405 F.2d 228 (9th Cir. 1968); *Coughlan v. United States*, 391 F.2d 371 (9th Cir.), *cert. denied*, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968). We have not, however, reversed convictions where ethical violations on the prosecutor's part have appeared and an effective waiver of the accused's right to counsel has occurred. *See, United States v. Four Star, Reinke v. United States, Coughlan v. United States, supra.* The instant case is distinguishable from the above cases because

---

7. *Id.*, note 2, *supra*.

8. ABA Disciplinary Rule 7–104 states:
 A. During the course of his representation of a client a lawyer shall not:
 1. Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.
 2. Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client.

Sykes was not an accused at the time of the government's contact with him. His conviction had already been affirmed on appeal and was pending on certiorari.

■ We need not, however, consider Sykes' status or whether he knowingly and intentionally waived his Sixth Amendment right to counsel in his contacts with Mayo and the FBI. For even if we assume that Sykes' Sixth Amendment right to counsel was violated, that right is a personal right, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and its violation as to Sykes does not give Partin standing to challenge his conviction. *Cf. United States v. LePera*, 443 F.2d 810, 812 (9th Cir. 1971), *cert. denied*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (defendant lacked standing to assert coconspirator's constitutional privilege against self-incrimination). Furthermore, if Partin does not have standing to raise any possible violation of Sykes' Sixth Amendment right as grounds for reversal, it follows *a fortiori* that he does not have standing to raise a violation of an ethical duty of the prosecutor to Sykes as grounds for reversal of his conviction.

### Partin's Right to Counsel

■ Sykes' testimony at Partin's trial as a government witness does raise the more serious question of whether Partin's Sixth Amendment right to the effective assistance of counsel was abridged. That right includes the right to be represented by counsel whose loyalties are undivided. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *United States v. Villarreal*, 554 F.2d 235, 236 (5th Cir. 1977), *cert. denied*, 434 U.S. 802, 98 S.Ct. 29, 54 L.Ed.2d 60.

When Sykes was called to the witness stand by the government, defense counsel McPherson expressed surprise at Sykes' appearance as a government witness. McPherson told Judge Scott that he had a conflict since he was then representing Sykes in a petition for certiorari before the Supreme Court of the United States.

McPherson moved for a mistrial in order to allow Partin to retain new counsel. Judge Scott recessed the trial at this point and held a hearing in chambers concerning this matter.

McPherson informed Judge Scott that he did not believe he would be able to effectively cross-examine Sykes on behalf of Partin because of Sykes' attorney-client privilege with him. Judge Scott then interviewed Sykes out of the presence of the Assistant United States Attorney and defense counsel. He determined that Sykes' desire to testify for the government was voluntary. He then explained the attorney-client privilege to Sykes. In response to this explanation and after discussing the nature of the privilege, Sykes said that McPherson could question him on anything. He waived his attorney-client privilege. McPherson and the Assistant United States Attorney returned and McPherson explained the attorney-client privilege to Sykes. Sykes again stated that McPherson could cross-examine him on anything and use anything he wanted to in his questioning "regardless of how he had learned it."

After Judge Scott returned to the bench, but in the absence of the jury prior to the resumption of the trial, Partin addressed the judge. He told the judge that he wanted a new attorney because he felt McPherson had a conflict of interest. Judge Scott denied the request. In denying the request, Judge Scott told Partin that he felt that the situation about which Partin was now complaining had occurred because Partin had chosen to ignore his earlier warning about the potential problems of multiple representation.

At the time of Sykes' direct testimony, McPherson was given copies of the two statements Sykes had made to the FBI. Prior to his cross-examination of Sykes and subsequent to the direct examination, McPherson interviewed Sykes. After the interview McPherson informed Judge Scott that he had had ample time to prepare his cross-examination and that he was ready to proceed. During McPherson's cross-examination of Sykes, he did not impeach the credibility of Sykes as a witness.

We have carefully reviewed the record in this case, including pertinent portions of earlier hearings and trials held in connection with the obstruction of justice indictment, and have concluded that Partin was not denied his Sixth Amendment right to the effective assistance of counsel. In view of Judge Scott's 1974 warning to Partin and the appearance of codefendant Trantham as a government witness at Partin's second trial, we find that Partin knowingly and intelligently waived his right to counsel whose loyalties were undivided. Furthermore, we find that Judge Scott's inquiry at trial and the resulting relinquishment by Sykes of his attorney-client privilege, avoided the occurrence of any actual conflict of interest.

It is clear that a defendant may waive his right to assistance of counsel who is free from any conflict of interest. *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Holloway v. Arkansas*, 435 U.S. 475, 483, n. 5, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). The Court in *Holloway* noted that the inquiry in *Glasser* into whether there had been a waiver confirmed that a defendant may waive this right. 435 U.S. at 483, n. 5, 98 S.Ct. 1173. Indeed, the Court stated, 435 U.S. at 482, 98 S.Ct. at 1178, that:

> Requiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel. This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation.

In considering whether Partin waived his right to the assistance of counsel free from any conflict of interest, it is necessary to consider the "facts and circumstances surrounding . . . [this] case, including the background, experience and conduct of" Partin. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

Partin was familiar with his constitutional right to the assistance of counsel unimpaired by any conflict of interest. As discussed above, Judge Scott had quite properly held a hearing in May 1974 in which he informed Partin and the other codefendants of the risks of multiple representation and the importance of their Sixth Amendment right. Judge Scott advised them of their right to have counsel appointed if they could not afford to retain separate counsel. He determined that the codefendants had discussed the risks of multiple representation with their counsel. Prophetically, he also advised them of the conflict of interest which could be caused by one codefendant testifying against another.

We note that Judge Scott's inquiry and warning is the type suggested by proposed Federal Rules of Criminal Procedure, Rule 44(c). That rule states in pertinent part that in cases of joint or multiple representation "the court shall promptly inquire with respect to each joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation." *Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure*, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (February 1978). *See, also, Kaplan v. United States*, 375 F.2d 895 (9th Cir. 1967), *cert. denied*, 389 U.S. 839, 88 S.Ct. 67, 19 L.Ed.2d 103 (requiring such a hearing where there is some indication of a possibility of conflict of interest occurring).

Partin was also familiar with the importance of counsel in our criminal justice system on a firsthand basis. The indictment under which Partin was tried grew out of two earlier criminal cases in which Partin was a defendant. In the course of those two cases he stood trial three times. See *United States v. Partin, supra*. Prior to those two criminal cases Partin was a defendant in a number of prosecutions in the early 1960's. *See: Hoffa v. United States*, 385 U.S. 293, 297–98, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). We have taken notice of Partin's prior involvement in criminal cases as a defendant solely in connection

with his ability to appreciate Judge Scott's 1974 admonition concerning the risks of multiple representation and the importance of the effective assistance of counsel. We note that Partin was never convicted in those previous criminal cases, other than the convictions which were reversed.

If the conflict of interest problem which Partin raises on appeal had been a completely unknown contingency prior to his trial, we might be reluctant to find a waiver of his right to counsel free from conflict of interest solely on the basis of Judge Scott's 1974 warning. To do so might force a defendant to waive his right to object to unknown problems at his trial. In this case, however, Partin was aware of the possibility that a codefendant, represented by McPherson, would testify as a government witness at his trial.

At Partin's second trial, when he was not represented by McPherson, one of the government witnesses was Ben Trantham, a codefendant who was represented by McPherson. The problem of a codefendant testifying against him, which Judge Scott had cautioned him about, had occurred. Despite this knowledge, Partin retained McPherson to represent him at his third trial. The fact that Sykes, not Trantham, testified at the third trial does not change the fact that the type of conflict which occurred was known prior to trial by both Partin and McPherson, who had reviewed the record of the earlier trial in preparation for trial.

In *Larry Buffalo Chief v. South Dakota*, 425 F.2d 271 (8th Cir. 1970), the defendant dismissed court-appointed counsel and retained the attorney who was representing his codefendants. The Eighth Circuit said that action alone was not sufficient to constitute a waiver of the defendant's right to the assistance of effective counsel. To constitute waiver the defendant would have to know of the conflict at the time he retained the attorney, the court said. 425 F.2d at 279–280. Here Partin knew of the conflict when he retained McPherson. In *United States v. Frame*, 454 F.2d 1136 (9th Cir. 1972), *cert. denied*, 406 U.S. 925, 92 S.Ct.

1794, 32 L.Ed.2d 126, we stated that once a defendant exercises "his right to retain counsel after being informed of the possible conflict and its consequences" he has waived "any subsequent claim based upon the alleged conflict." 454 F.2d at 1138.

Partin's decision to retain McPherson for his third trial after he had been warned of the risks inherent in multiple representation and after he had seen one of his codefendants represented by McPherson testify at his second trial, demonstrates a knowing and intelligent waiver of his right to representation free from conflict of interest.

■ Even if Partin had not waived this Sixth Amendment right, the testimony of Sykes did not result in a conflict of interest for McPherson. In *Holloway v. Arkansas, supra,* the Court held that, although joint representation of codefendants is not *per se* violative of constitutional guarantees of effective assistance of counsel, when a trial court is informed in a *timely* manner of the possibility of a conflict of interest, the court must appoint separate counsel unless it ascertains that the possibility is too remote to warrant such a step. 435 U.S. at 485–486, 98 S.Ct. 1173. The Court also addressed the problem of a defense counsel's untimely motion for separate counsel.

> The State has an obvious interest in avoiding such abuses [defense counsel seeking to delay trials by untimely motions]. . . . When an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics (citations omitted). *Nor does our holding preclude a trial court from exploring the adequacy of the basis of defense counsel's representations regarding a conflict of interests* . . . . (emphasis supplied)

435 U.S. at 486–87, 98 S.Ct. at 1180.

The hearing which Judge Scott conducted at Partin's trial, in order to determine the nature of McPherson's motion for a mistrial, was an appropriate response to

McPherson's untimely motion.[9] Judge Scott determined that the basis of the motion was McPherson's belief that he would be unable to cross-examine Sykes because of the attorney-client privilege Sykes possessed.

■ Once Sykes waived his attorney-client privilege the conflict which concerned McPherson was eliminated. The privilege was not McPherson's but Sykes'. *See, e.g. United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976) (the Court noted that where an attorney-client privilege existed, it was the witness, not the attorney, who must object to the cross-examination).

In *United States v. Vargas-Martinez*, 569 F.2d 1102, 1104 (9th Cir. 1978), a codefendant testifying against one of the appellants, Arroyo-Ayala, was represented by Arroyo-Ayala's attorney. The testifying codefendant refused to waive any conflict of interest claim and the attorney was unable to cross-examine him. We upheld the trial court's decision that required Arroyo-Ayala to be represented by separate counsel. Contrary to the codefendant in *Vargas-Martinez*, Sykes waived the attorney-client privilege and there was no need to declare a mistrial in order for Partin to retain new counsel.

■ Partin, however, points to McPherson's failure to impeach Sykes' credibility during cross-examination as demonstrating a conflict of interest. This is the only specific aspect of McPherson's representation which Partin points to on appeal. An examination of the record indicates that the reason the scope of Sykes' cross-examination was limited was because McPherson did not wish Sykes' conviction on Count II of the same indictment under which Partin was being tried to come to the attention of the jury. Moreover, McPherson's associate counsel could have conducted this examination.

At the beginning of the trial McPherson asked Assistant United States Attorney Mayo if he planned to bring out the prior convictions of any of Partin's codefendants who would testify at trial (two codefendants not represented by McPherson also testified at the trial). Mayo responded that in accordance with the court's ruling at Partin's first trial, he would bring out the witnesses' convictions if their credibility was attacked.

By not attacking Sykes' credibility, McPherson avoided bringing to the attention of the jury the fact that one of Partin's coconspirators had been found guilty of the same conspiracy he was charged with on Count II. McPherson's cross-examination of codefendant Jack Gremillion, Jr., who had pled guilty to Count II, was limited in the same manner as his cross-examination of Sykes. The other codefendant, Jerry Millican, had not been convicted; his testimony is the subject of the witness security program jury instruction, *infra*.

■ In a case such as this when the trial judge made an inquiry into the multiple representation of codefendants by defense counsel and warned the codefendants of the dangers of such representation, and where the defense counsel and the defendant were aware of the possibility of a conflict of interest occurring, the defendant bears the burden of demonstrating that specific prejudice has resulted to him from the alleged conflict of interest. *United States v. Eaglin*, 571 F.2d 1069, 1086 (9th Cir. 1977). Appellant Partin has not met that burden.

### Witness Security Program Jury Instruction

■ The government's last witness was Jerry Millican, a former codefendant of Partin's who had not been convicted. Millican was participating in the witness security program. In the course of his direct testimony the judge gave an instruction to the jury concerning the witness security program. This instruction was given at the request of the government in order to disclose to the jury, on direct examination,

---

9. In view of McPherson's and Partin's knowledge of Trantham's appearance at Partin's second trial, this motion can only be characterized as untimely.

information that could damage the witness' credibility. The defense has a right to show that a witness, while in the program, has received substantial benefits. *United States v. Partin*, 552 F.2d at 645.

After the instruction was given, defense counsel moved for a mistrial and stated in appellant's brief, "the defense had believed the judge was only going to charge that this was a legitimate program authorized by Congress and, instead, the jury was told that the Attorney General had made a determination that Millican's life had been threatened." If such an instruction had been given, it could perhaps be prejudicial to Partin. The instruction, however, does not state that the Attorney General must believe that the witness is threatened.

■ The particular sentence of the instruction which is objected to states: "[The witness] must satisfy the Attorney General that he is a necessary witness in a case and that he has reason to believe that his wellbeing is in danger, his life or wellbeing, that he is threatened in some way." [10] The instruction informs the jury that the witness must satisfy the Attorney General that *the witness* believes he is threatened. Nonetheless, as the Fifth Circuit noted in *United States v. Partin, supra*, an instruction regarding the witness security program must "be handled delicately," 552 F.2d at

645, but the Fifth Circuit also recognized the fact that the risk involved may be to some extent unavoidable.

■ Although the sentence quoted above was not contained in the instruction approved by the Fifth Circuit in *United States v. Partin, supra*, it is a correct statement of the law. It refers to the possibility of a threat but does not tell the jury that the Attorney General has concluded that there was a threat or who may have made the threat if there was one. The instruction is fair to the government in that it explains why the witness is receiving government money. Indeed, the cross-examination of Millican emphasized the government payments he received as a means of attacking his credibility. The defense again emphasized the government payments to the witness during closing argument. Judge Scott did not give a witness security program instruction at the close of the trial, nor was he requested to do so by the defendant, although the government urged, unsuccessfully, that the witness security instruction should be repeated.

■ In view of the emphasis by the defense on the government payments received by Millican, the instruction properly explained information to the jury which concerned the witness' credibility. Further-

---

10. The entire instruction states:

Ladies and Gentlemen, you have just heard something mentioned called the witness security program, and the Court wants to give you this instruction in connection with that and tell you what a witness security program is. A witness must qualify before he is able to enroll in the program. And when he is enrolled he is given a certain amount of money. It is not salary—excuse me, I will start again. This is an attempt of the Court to instruct you what the witness security program is. It is a program under which this witness has lived in the past. The witness must qualify before he is able to be enrolled in that program. And when he is enrolled he is given a certain amount of money. It is not salary, it is just a gratuity in lieu of salary to allow him to live in the place where he is assigned to live. And he is assigned to the place and he is under the custody of the United States Marshal Service. Only a few—only one or two persons, that is, in that service, actually know where the witness is, the man who is actually in charge of him on the spot and one person higher up in the department. He is assigned a place to live. His identity is totally concealed. He has to assume a name. He is not at liberty, but is allowed to work. I think for a practical matter it is very hard for him to work because he cannot identify himself or his background. And to qualify to get on this program he must certify, I mean he must satisfy the Attorney General that he is a necessary witness in a case and that he has reason to believe that his well-being, is in danger, his life or wellbeing, that he is threatened in some way. And if he fulfills those two qualifications he may or may not be put on the witness security program. And the main thing is, the main effect is that no one, not just the public, but even his closest associates, former associates, have no idea where he is or where his whereabouts are. They cannot get in touch with him.

more, in view of all of the evidence presented by the prosecutor, this instruction cannot be said to have tilted the jury toward a verdict of guilty.

██ Appellant also argues that the trial court erred in giving the instruction without a copy of it having been furnished to defense counsel. Appellant relies on Federal Rules of Criminal Procedure, Rule 30. Appellant's argument is incorrect; Rule 30 applies to final instructions given to a jury, not to instructions given during trial unless a written request for such instruction was tendered which, in this case, it was not. The very wording of Rule 30 adequately demonstrates that this was not intended to apply to cautionary instructions given during trial proceedings.

### Judge Scott's Refusal to Recuse Himself

██ Appellant argues that Judge Scott should have recused himself because he had presided at the trials of all of the codefendants in this case. This exact same question has been decided in a case involving Partin's codefendants and Judge Scott. *United States v. Partin, supra* at 636–39. We agree with the Fifth Circuit that Judge Scott did not err in failing to recuse himself. Appellant has alleged no bias on the part of Judge Scott, nor did he comply with the requirements of 28 U.S.C. §§ 144 or 455. The recusal motion was properly denied. *United States v. Anderson*, 561 F.2d 1301, 1303 (9th Cir. 1977), *cert. denied*, 434 U.S. 943, 98 S.Ct. 438, 54 L.Ed.2d 304.

We conclude that an overall view of the entire trial convincingly demonstrates that Partin had a fair trial.

AFFIRMED.