72 F.3d 136
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Ramon MATTA-BALLESTEROS, Defendant-Appellant.
 No. 91-50165.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 4, 1993.
Submission Vacated April 7, 1994.
Resubmitted June 6, 1994.
Decided Dec. 15, 1995.
 
 Before: BROWNING, POOLE, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Juan Ramon Matta-Ballesteros (Matta) appeals eleven felony cocaine-trafficking convictions. Matta was convicted of conspiring to import cocaine (21 U.S.C. Sec. 963), conspiring to distribute cocaine (21 U.S.C. Sec. 846), eight counts of aiding and abetting the distribution, or attempted distribution, of cocaine (21 U.S.C. Secs. 841(a)(1) & 846; 18 U.S.C. 2) and engaging in a continuing criminal enterprise (21 U.S.C. Sec. 848). We have jurisdiction under 28 U.S.C. Sec. 1291; we affirm in part and vacate in part.[1]
 
 
 3
 * On February 25, 1988, the United States indicted Matta and five co-defendants for participating in an international cocaine trafficking conspiracy.[2] The indictment charged that between 1983 and 1985, Matta was the leader and organizer of a cocaine ring that had smuggled massive quantities of cocaine from South America to Mexico, and from there into Arizona, Southern California, and New York.
 
 
 4
 A key witness in the case was John Drummond, whom the government alleged ran Matta's Arizona operations. Other witnesses testified about Matta's Southern California cocaine operations.
 
 
 5
 In addition to this testimony, two officers of the Spanish National Police, Agents Martinez and Gormaz, testified about telephone wiretaps that had been made of Matta's home and office in Spain.
 
 
 6
 The jury found Matta guilty on eleven of twelve counts. The judge sentenced Matta to life imprisonment on the continuing criminal enterprise count, and to fifteen years for each of the other ten counts. The fifteen year sentences were to run consecutively to each other, for a total of 150 years, but concurrently with the life sentence. Matta filed a timely notice of appeal.
 
 II
 A. Speedy Trial Issues
 
 7
 Matta argues that delays in his trial violated his Constitutional and statutory speedy trial rights, and deprived him of effective assistance of counsel. We review these issues de novo. United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1049-50 (9th Cir.1990) (speedy trial); United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991) (ineffective assistance of counsel).
 
 
 8
 Matta was arraigned on May 4, 1989. After a number of continuances, Matta's trial date was set for April 24, 1990. Matta, who either requested or agreed to each of these continuances, does not complain of pretrial delay during this period. Rather, he objects to a three-month delay that occurred when his April 24 trial date was postponed for an intervening trial before Judge Rafeedie. That trial concerned Matta's alleged complicity in the kidnapping and murder of DEA agent Enrique Camarena.
 
 1. The Speedy Trial Act
 
 9
 The Speedy Trial Act, 18 U.S.C. Secs. 3161-3174, requires criminal trials to "commence within seventy days from the filing date ... of the information or indictment, or from the date the defendant has appeared before a judicial officer," whichever is later.[3] 18 U.S.C. Sec. 3161(c)(1). If the trial does not begin within seventy days, the information or indictment will be dismissed on defendant's motion. Id. Sec. 3162(a)(2). However, "[f]ailure of the defendant to move for dismissal prior to trial ... shall constitute a waiver of the right to dismissal under this section." Id.; see United States v. Brown, 761 F.2d 1272, 1277 (9th Cir.1985).
 
 
 10
 The government contends Matta has waived his Speedy Trial Act claim. We need not address this contention, because we conclude Matta's Speedy Trial Act claim fails on the merits.
 
 
 11
 Matta's theory that the Camarena trial caused excessive delay is directly refuted by the text of the Act. The Act expressly excludes from computation "[a]ny period of delay resulting from other proceedings concerning the defendant, including ... delay resulting from trial with respect to other charges against the defendant." 18 U.S.C. Sec. 3161(h)(1)(D). The Ninth Circuit has several times denied speedy trial challenges on this basis. E.g., United States v. Lopez-Espindola, 632 F.2d 107, 109 (9th Cir.1980); United States v. Allsup, 573 F.2d 1141, 1144 (9th Cir.), cert. denied, 436 U.S. 961 (1978).[4]
 
 
 12
 Matta tries to get around this Speedy Trial Act exception by arguing that the delay for the Camarena trial was not the "result" of other charges against him, but was instead the "result" of Judge Rafeedie's refusal to sever him from the Camarena trial. This argument is meritless. Judge Rafeedie did not "cause" the delay; the Camarena trial caused the delay. Judge Rafeedie simply refused to sever Matta from the trial.
 
 
 13
 But Matta argues that Judge Rafeedie was required to grant a severance, because the Speedy Trial Act excludes only unavoidable intervening proceedings. We reject this argument. Most proceedings which toll the speedy trial period could be postponed or continued. That does not mean that the presiding judge in each case must continue the proceeding or else become a superseding cause of the delay. Such a reading would drastically narrow, if not entirely eliminate, the proceedings which toll speedy trial periods under the Act. The Speedy Trial Act was no bar to Matta's prosecution.
 
 2. Constitutional Claims
 
 14
 Matta also argues that the Camarena trial violated his constitutional speedy trial rights, and deprived him of effective assistance of counsel. Neither claim has merit.
 
 
 15
 A balancing of four factors governs whether a constitutional violation has occurred: (1) the length of the delay; (2) the reason for the delay; (3) prejudice to the defendant; and (4) the defendant's assertion of his speedy trial right. Dogget v. United States, 505 U.S. 647, 651 (1992).
 
 
 16
 Here, the balancing comes out decidedly in the government's favor. First, and perhaps most significantly, Matta complains of only a three-month delay, the length of the Camarena trial. Much longer delays have been upheld by this court and by the Supreme Court. See, e.g., Barker v. Wingo, 407 U.S. 514, 533-36 (1972) (five-year delay); Creekmore v. District Court, 745 F.2d 1236, 1238 (9th Cir.1984) (11-month delay).
 
 
 17
 Second, the reason for the delay was legitimate and in good faith: Matta was on trial elsewhere.
 
 
 18
 Third, Matta does not demonstrate prejudice due to the delay. He complains that he was "required to prepare for two protracted cases simultaneously," and that he was forced to start the trial in this case "with only a few weeks re-preparation between the two cases." But those are not speedy trial problems. They are just the opposite: problems arising because the second trial started too soon. Matta's real complaint, in other words, is that the delay for the Camarena trial was not long enough, forcing him to try two large criminal cases back-to-back. Whatever hardship that may have caused Matta cannot be attributed to excessive delay. The delay did not prejudice Matta in the sense relevant to speedy trial challenges.
 
 
 19
 The last of the four speedy trial factors is whether Matta objected to the delay. Matta did object to the delay. But again, these were really objections that the trial started too soon, not too late. And in any event, the presence of objections does not outweigh the three other factors. A delay that lasts only three months, arises for a legitimate reason, and does not prejudice the defendant (in the relevant sense), does not violate a defendant's constitutional speedy trial rights.
 
 
 20
 Matta's ineffective assistance of counsel claim is also meritless. To begin with, "ineffective assistance claims are ordinarily reviewed only in collateral proceedings because such claims usually cannot be resolved without the development of facts outside the original record." United States v. Sitton, 968 F.2d 947, 960 (9th Cir.), cert. denied, 113 S.Ct. 478 (1992), and cert. denied, 113 S.Ct. 1306 (1993).
 
 
 21
 In any event, Matta does not cite a single error of counsel as a result of the delay, a failure which is fatal to his claim. See Strickland v. Washington, 466 U.S. 668, 687, 690 (1984).
 
 B. The Spanish Wiretaps
 
 22
 Matta objects to the use of written summaries in place of original tape recordings made from wiretaps of his telephone. Spanish law enforcement officers made the summaries before the original recordings were destroyed. The officers were allowed to read from the summaries at trial.
 
 
 23
 Matta asserts two kinds of challenges to the summaries:
 
 
 24
 (1) that the wiretaps underlying the summaries were illegal; and
 
 
 25
 (2) that even if the wiretaps were legal, the summaries themselves were inadmissible under the rules of evidence and under the Confrontation Clause.[5]
 
 
 26
 We review the district court's findings of historical facts for clear error, United States v. Booker, 952 F.2d 247, 249 (9th Cir.1991), its legal rulings de novo, id., and its evidentiary rulings for an abuse of discretion, United States v. Adrian, 978 F.2d 486, 492 (9th Cir.1992).
 
 1. Legality of the Wiretaps
 
 27
 Matta argues that the Spanish wiretaps were illegal, making the summaries unusable "fruits." But Matta does not establish an exclusionary principle applicable to the recordings. He complains of his inability to verify whether permission for the wiretaps was properly obtained under Spanish law. But even if he could show that the wiretaps were illegal in Spain--a doubtful proposition in light of testimony that Spanish law was followed--Matta is far from specific about why such a showing would entitle him to exclusion. He appears to rest his contention on Fourth Amendment exclusionary principles. That reliance, however, is misplaced. The Fourth Amendment's exclusionary rule is inapplicable to searches in foreign countries. United States v. Verdugo-Urquidez, 494 U.S. 259, 274-75 (1990).
 
 
 28
 Alternatively, Matta argues that the wiretaps were illegal under American law, violating Title III of the Omnibus Crime Control Act of 1968, 18 U.S.C. Secs. 2510-20. But this argument fails also, because, as Matta himself acknowledges, the Ninth Circuit has squarely held that "Title III has no extraterritorial force." United States v. Peterson, 812 F.2d 486, 492 (9th Cir.1987).
 
 2. Admissibility of the Summaries
 
 29
 Alternatively, Matta argues that the wiretap summaries should have been excluded on evidentiary and Confrontation Clause grounds. But as explained below, the summaries were (1) admissible as the best evidence of the destroyed tapes, (2) excepted from the hearsay rule as "past recollections recorded," and (3) not in violation of the Confrontation Clause.
 
 
 30
 a. Best Evidence Issues
 
 
 31
 Matta argues that it is unfair to allow written notations to substitute for two years of actual recordings. He argues that without access to the audio tapes themselves, he could not challenge the audibility of the recordings or the accuracy of the agents' identification of his voice.
 
 
 32
 The best evidence rule addresses just such situations. It provides that the original of a tape recording normally is required. Fed.R.Evid. 1002. However, "[t]he original is not required, and other evidence of the contents of a ... recording ... is admissible if--(1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." Fed.R.Evid. 1004(1).
 
 
 33
 Secondary evidence used in place of original evidence need meet no threshold standard of quality or reliability; those questions go to weight, not admissibility. United States v. Gerhart, 538 F.2d 807, 809 n. 2 (8th Cir.1976) (cited with approval in Debose v. United States Dep't of Agric., 700 F.2d 1262, 1268 (9th Cir.1983)).
 
 
 34
 Moreover, the use of secondary evidence in place of originals does not violate the Confrontation Clause. Cf. United States v. Benedict, 647 F.2d 928, 931-32 (9th Cir.) ("It is the person who observed, handled or tested the primary evidence who is the subject of cross-examination, not the evidence itself.... 'The fact that the sample is missing may make cross-examination more difficult, but that does not amount to a denial of confrontation' ") (quoting United States v. Sewar, 468 F.2d 236, 238 (9th Cir.1972), cert. denied, 410 U.S. 916 (1973)), cert. denied, 454 U.S. 1087 (1981).
 
 
 35
 Here, the government presented evidence that the original wiretap recordings were not destroyed in bad faith, but were summarized and then erased in accordance with standard Spanish National Police procedure. The Spanish officials testified at length about their procedure for listening to the tapes and transcribing or summarizing them. Matta, who extensively cross-examined the officials, makes no plausible argument why it was an abuse of the district court's discretion to accept the officials' testimony. Consequently, we affirm the district court's ruling that Rule 1004(1) allowed the summaries to substitute for the original recordings.
 
 
 36
 b. The Hearsay Exception
 
 
 37
 The fact that the summaries properly survived a best evidence challenge does not mean they are immune from hearsay problems. Indeed, as out-of-court statements offered to prove the truth of the matters asserted, the summaries are classic hearsay. They require an appropriate exception or they will be excluded, notwithstanding their escape from best evidence difficulties.
 
 
 38
 The relevant exception is contained in Rule 803(5), for past recollections recorded. A document is admissible as a past recorded recollection if "(1) the witness once had knowledge about the matters in the document, (2) the witness now has insufficient recollection to testify fully and accurately, and (3) the record was made at a time when the matter was fresh in the witness' memory and reflected the witness' knowledge correctly." United States v. Patterson, 678 F.2d 774, 778 (9th Cir.) (citations and footnote omitted), cert. denied, 459 U.S. 911 (1982).
 
 
 39
 Matta challenges only the first of these elements. He argues that the agents did not have "knowledge" of the matters in the tapes. According to Matta, "the witnesses had no personal knowledge of the matter of the conversations at issue. They never listened to the actual conversations. They listened only to the tape recordings."
 
 
 40
 This objection misses the mark. For purposes of Rule 803(5), the agents need not have "knowledge" (i.e., firsthand perception) of the original conversations; that would require them to have been in the room with Matta. What they must have firsthand experience of is whatever it was they summarized--here, the wiretap recordings. This they concededly had.[6] The "knowledge" Matta refers to is actually the inference that what was on the recordings was Matta's voice. That inference, however, is a question for trial, not a prerequisite of Rule 803(5). All Rule 803 requires the agents to have "known" was what sounds appeared on the original recordings. What the sounds meant is a separate question.
 
 
 41
 Matta is also mistaken that the introduction of the recorded recollections violated the Sixth Amendment's Confrontation Clause. See United States v. Marshall, 532 F.2d 1279, 1285 (9th Cir.1976) (past recollections recorded not violative of the Confrontation Clause).
 
 
 42
 There were thus neither best evidence problems, nor hearsay problems, nor Confrontation Clause problems with the agents' recitation from their wiretap summaries. Accordingly, we affirm the district court on this issue.
 
 C. Drug Agent Opinion Testimony
 
 43
 Matta argues that law enforcement witnesses should not have been allowed to testify that Matta's use of terms such as "cows" and "trucks" in recorded conversations actually referred to cocaine, airplanes, and so on. He argues that this testimony exceeded the scope Federal Rule of Evidence 702, governing expert witness testimony, and was also unfairly prejudicial under Rule 403.
 
 
 44
 A decision to admit expert testimony is reviewed for an abuse of discretion, and will not be disturbed unless "manifestly erroneous." United States v. Espinosa, 827 F.2d 604, 611 (9th Cir.1987) cert. denied, 485 U.S. 968 (1988). Further, admission of such evidence, even if erroneous, will not be disturbed if the error is harmless. United States v. Echavarria-Olarte, 904 F.2d 1391, 1397-98 (9th Cir.1990).
 
 
 45
 The court did not abuse its discretion by admitting this evidence. Under Rule 702, expert testimony is admissible on specialized topics if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Suitable expert testimony under the rule includes testimony about the "methods and techniques," or "modus operandi," of narcotics traffickers. Espinosa, 827 F.2d at 612.
 
 
 46
 Here, the expert agents testified that "truck" or "big car" meant airplane; that "beer" referred to fuel; that "technician" meant either a chemist or a pilot; and that "pesos" and "cows" and "toys for Christmas" referred to cocaine. It was not error for the district court to conclude the jury would be aided by this testimony.
 
 
 47
 Nor was the expert testimony unfairly prejudicial. Judge Rea qualified the testimony with a jury instruction admonishing the jury to give the testimony "the weight, if any, to which you deem it entitled." Moreover, Matta's attorney extensively cross-examined the agents about their testimony, and there was other evidence--such as John Drummond's testimony, and the testimony of other involved conspirators--on which the jury could have relied to conclude that Matta was involved in drug trafficking. Under these circumstances, even if the district court abused its discretion by finding the testimony not unfairly prejudicial, any such error would be harmless.
 
 
 48
 Accordingly, the district court's admission of this testimony was not reversible error.
 
 D. The "Drug Kingpin" Testimony
 
 49
 Matta next argues that his identification as the "kingpin" of the drug conspiracy was based on hearsay. Charles Lager, one of John Drummond's confederates, testified that Drummond told him "Don Jose" was the "head kingpin's name," and that Don Jose "lives in Spain." Matta argues that the district court erroneously admitted this statement under the co-conspirator exception to the hearsay rule. See Fed.R.Evid. 801(d)(2)(E).
 
 
 50
 A trial court's decision to admit evidence of a co-conspirator's statement is normally reviewed for abuse of discretion and harmless error. United States v. Garza, 980 F.2d 546, 553 (9th Cir.1992). Here, however, Matta must show plain error, because he did not specifically object to the kingpin testimony at trial. United States v. Traylor, 656 F.2d 1326, 1333 & n. 6 (9th Cir.1981).
 
 
 51
 We need not reach the question whether Drummond's statement was made in furtherance of the conspiracy, as required by Rule 801(d)(2)(E). This is because there was independent evidence that Matta was known as "Don Jose," and that he supplied the cocaine for the conspiracy. John Drummond testified to that effect, as did another witness. Any error from Lager's additional testimony to these facts was not plain error. The kingpin testimony does not warrant reversal of Matta's convictions.
 
 
 52
 E. The Toy Photos, Side Band Tapes, and Airplane Manuals
 
 
 53
 Matta alleges an anti-defendant bias in some of the court's evidentiary rulings. In particular, he objects to the court's exclusion of photographs depicting Matta delivering Christmas presents to his employees, and to the court's refusal to exclude tapes made of Matta's two-way radio conversations and airplane manuals found at Matta's home. The district court's determinations of relevancy are reviewed for an abuse of discretion. United States v. Schaff, 948 F.2d 501, 505-06 (9th Cir.1991).
 
 
 54
 Our review of the district court's rulings, however, reveals no abuse of discretion in its decisions to allow the radio transmission and airplane manual evidence. We accept the court's discretionary admission of this evidence.
 
 F. The Prosecution's Trial Conduct
 
 55
 Matta alleges a number of instances of prosecutorial misconduct. He claims the government (1) elicited irrelevant evidence linking him to prostitutes; (2) elicited irrelevant evidence linking him to firearms; (3) insinuated that the DEA would not have been investigating him if he were innocent; (4) reminded the jury of stricken testimony during closing arguments; and (5) vouched for the credibility of the government and its witnesses.
 
 
 56
 The district court's evidentiary rulings and decision to deny a mistrial are reviewed for an abuse of discretion and for harmless error. Ingram v. Acands, Inc., 977 F.2d 1332, 1341 (9th Cir.1992) (evidentiary rulings); United States v. Homick, 964 F.2d 899, 906 (9th Cir.1992) (mistrial). Prosecutorial misconduct is reviewed for prejudicial error. Such error is present when it is more probable than not that the prosecutor's conduct affected the fairness of the trial. United States v. McKoy, 771 F.2d 1207, 1212 (9th Cir.1985).
 
 
 57
 None of Matta's allegations amounts to reversible error. While there was mention of prostitutes at trial, the district court limited such testimony to a relevant purpose, namely, showing a relationship between Matta and Drummond. Similarly, the court sustained Matta's objections to evidence of Matta's possession of, or predilection for, firearms, and gave a limiting instruction. The court did not abuse its discretion by denying a mistrial on this basis.
 
 
 58
 Matta also objects to a question the government asked of a DEA agent. The government asked whether, if an initial investigation of a suspect reveals no wrongdoing, the DEA discontinues its investigation. Matta argues that the question implied the ongoing investigations of Matta were evidence of his guilt. The court sustained Matta's objection but denied a mistrial.
 
 
 59
 The posing of this question, without more, cannot be said to have affected the fairness of the entire trial. The jury had already heard a great deal of independent evidence that Matta was engaged in wrongdoing. And the court sustained Matta's objection before the witness had answered. Matta was not so prejudiced by this question as to require a new trial.
 
 
 60
 Matta also argues that in closing argument, the government referred to stricken testimony. Matta did not object to the argument, and his claim is reviewed for plain error. United States v. Feldman, 853 F.2d 648, 652 (9th Cir.1988), cert. denied, 489 U.S. 1030 (1989).
 
 
 61
 In its closing argument the government did refer indirectly to stricken testimony. The testimony was that of a DEA agent who said that Matta had been untruthful after his arrest. But even if the jury considered and accepted the DEA agent's testimony that Matta was untruthful, that would not have changed the result in this case. In light of the substantial evidence of Matta's guilt, an opinion of one DEA agent about Matta's honesty is extremely unlikely to have made a difference one way or another. The reference to stricken testimony does not warrant reversal.
 
 
 62
 Finally, Matta argues that in its summation at the end of trial, the government vouched for its own and its witnesses' credibility. A prosecutor's improper closing argument warrants reversal only if it "rises to the level of plain error." United States v. Lopez, 803 F.2d 969, 972 (9th Cir.1986), cert. denied, 481 U.S. 1030 (1987).
 
 
 63
 We have repeatedly stated that "a prosecuting attorney may not and should not vouch for witnesses." United States v. Smith, 962 F.2d 923, 933 (9th Cir.1992); United States v. Kerr, 981 F.2d 1050, 1051 (9th Cir.1992). However, both the Ninth Circuit and the Supreme Court have recognized an exception to this rule. Where the defense impugns the prosecutor's integrity or implies the prosecutor coached witnesses or suborned perjury, the prosecutor's subsequent vouching may be deemed "invited" and thus excused. E.g., United States v. Lopez-Alvarez, 970 F.2d 583, 598 (9th Cir.), cert. denied, 113 S.Ct. 504 (1992); United States v. Young, 470 U.S. 1, 17-20 (1985).
 
 
 64
 Matta is correct that the government vouched for the credibility of its witnesses. However, Matta clearly invited such a response. First, the defense clearly accused the government of coaching its witnesses:
 
 
 65
 Mr. Connolly suggests that memories improve, perhaps, like wine and cheese with age. What happened six years ago can be remembered like that....
 
 
 66
 Memories do not get better with age. They get better with coaching. They get better with suggestion. They get better if you understand what the interrogator who is asking you questions wants out of you for an answer.
 
 
 67
 Second, the defense accused the government of putting made-up facts before the jury:
 
 
 68
 Was a dog used to sniff the automobile to find out if there was cocaine to give them a reason to open the car or not? Who knows? Probably not significant at this stage but another example of how whole facts--a whole set of facts can get made up or misplaced and put before somebody like yourself where you have to judge what is going on. A whole set of facts, not a simple mistake, a whole set of facts that the dog was there and scratched the paint off the car.
 
 
 69
 Third, the defense suggested that the government had thrown its credibility and prestige behind evidence and arguments:
 
 
 70
 Now, why is that? Why [is "M-7" Matta's code name on the radio tapes]? That does not make any sense at all except ... that the government wants you to believe it because they are the government. That is why.
 
 
 71
 In responding to these allegations, the government did not create plain error.
 
 G. The Witness Protection Program
 
 72
 Matta assigns error to the district court's jury instruction concerning the federal witness protection program. The district court's formulation of jury instructions is reviewed for an abuse of discretion. United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir.1991).
 
 
 73
 Matta objects to the portion of the jury instruction that indicated that the Attorney General is authorized to enroll witnesses in the protection program "whenever in his judgment testimony from ... a witness would place his life or person or the life or person of a member of his family or household in jeopardy." Matta's concern is that this instruction suggested he was dangerous or had threatened witnesses. However, we have upheld an instruction stating that to be included in the witness protection program, a witness "must satisfy the Attorney General that ... he has reason to believe that his well-being, is in danger, his life or well-being, that he is threatened in some way." United States v. Partin, 601 F.2d 1000, 1010 n. 10 (9th Cir.1979) (instruction given mid-trial), cert. denied, 446 U.S. 964 (1980).
 
 
 74
 In Partin, despite this clear implication that a witness was afraid, the court found no error. In reaching this conclusion the court noted (1) that the defense had itself raised the witness protection program for impeachment purposes, and (2) that in light of the other evidence in the case, the instruction "cannot be said to have tilted the jury toward a verdict of guilty." Partin, 601 F.2d at 1011.
 
 
 75
 The first factor, that the defense put the program in issue, is certainly present here. The second factor, that in light of the other evidence, the instruction did not "tilt" the jury toward guilt, is also satisfied here. This is true (1) because the other evidence of Matta's guilt was substantial, and (2) because of evidence that it was not Matta the witnesses feared, but other conspirators. Cf. United States v. Castleberry, 642 F.2d 1151, 1153 (9th Cir.) (extensive trial testimony about the witness protection program not reversible error, where there was evidence that others, and not the defendants, were responsible for witnesses' fear), cert. denied, 452 U.S. 966 (1981). Thus, the court's jury instruction was not reversible error.
 
 H. The Aiding and Abetting Instruction
 
 76
 Matta also challenges the district court's jury instructions regarding the aiding and abetting charges. Matta did not object to these instructions below, and the parties agree that a plain error standard governs this our review. United States v. Castro, 887 F.2d 988, 992 (9th Cir.1989).
 
 
 77
 Matta argues that the aiding and abetting instruction failed to inform the jury that it was required not only to find him guilty beyond a reasonable doubt, but also to find Drummond, Matta's "abettee," to be guilty beyond a reasonable doubt.
 
 
 78
 It is true that "an alleged aider and abettor cannot be convicted unless there is proof beyond a reasonable doubt that the underlying offense was committed."[7] United States v. Mann, 811 F.2d 495, 497 (9th Cir.1987).
 
 
 79
 Here, the court told the jury that the government must prove beyond a reasonable doubt that Matta "aided ... John Drummond to distribute cocaine." This instruction was not reversible error. In order for the jury to find beyond a reasonable doubt that Matta "aided ... John Drummond to distribute cocaine," it must first have found that Drummond did, in fact, distribute the cocaine. Consequently, the instruction was adequate.
 
 I. The Sentence
 
 80
 Matta challenges his sentence of life imprisonment without the possibility of parole, which was imposed for the continuing criminal enterprise conviction. Matta has three objections to the sentence: (1) that the district court lacked jurisdiction to strike the parole provision, because Matta's notice of appeal had already been filed, transferring all jurisdiction to the Ninth Circuit; (2) that it was illegal for the district court to increase the severity of an existing sentence; and (3) that the life sentence was cruel and unusual punishment.
 
 
 81
 Each of these claims fails. While normally the filing of a notice of appeal deprives the district court of jurisdiction, there was a statutory exception to this rule at the time of Matta's resentencing. Former Federal Rule of Criminal Procedure 35(a) provided that the district court "may correct an illegal sentence at any time...."[8] See Doyle v. United States, 721 F.2d 1195, 1198 (9th Cir.1983) (interpreting former Rule 35(a)).
 
 
 82
 Nor is Matta correct that his sentence, once entered, could not subsequently be modified in a manner that made it more severe. It is true that "the general rule is that a change in a legal sentence to increase the penalty it imposes violates the double jeopardy clause." United States v. Wingender, 711 F.2d 869, 870 (9th Cir.1983). However, "there is no such bar to increasing an illegal or erroneous sentence." Id. (internal quotation marks and citation omitted). Here, the original sentence was clearly illegal. Under Wingender, the district court was entitled to amend its sentencing order to correct the illegality.
 
 
 83
 Finally, Matta claims that his life sentence was cruel and unusual punishment because disproportionate to his offense. This claim also fails. We review "de novo the legality of a district court's sentence under the [E]ighth [A]mendment." United States v. Bland, 961 F.2d 123, 128 (9th Cir.), cert. denied, 113 S.Ct. 170 (1992).
 
 
 84
 Matta's claim of disproportionality is barred by, among other decisions, the Supreme Court's decision in Harmelin v. Michigan, 501 U.S. 957 (1991). There, the Court upheld a life sentence without the possibility of parole for simple possession (as opposed to possession with the intent to distribute) of 672 grams of cocaine by a defendant with no prior felony convictions. It is inconceivable that the Supreme Court, having upheld the life sentence without parole of a first-time felon's possession of 672 grams of cocaine, would find an Eighth Amendment violation in this case.
 
 J. The Lesser Included Conspiracy Counts
 
 85
 The government concedes it was improper to convict and sentence Matta on both the continuing criminal enterprise charge and the two conspiracy charges, the latter being lesser included offenses. United States v. Hernandez-Escarsega, 886 F.2d 1560, 1582 (9th Cir.1989) (vacating conspiracy convictions under 21 U.S.C. Sec. 846, in light of conviction for continuing criminal enterprise under 21 U.S.C. Sec. 848), cert. denied, 497 U.S. 1003 (1990).
 
 
 86
 In light of this error, Matta's conspiracy convictions must be vacated.
 
 
 87
 Matta's conspiracy convictions are VACATED. Matta's remaining convictions and sentences are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Alleging that he was kidnapped in Honduras by United States officials and tortured en route here, Matta also challenges the United States' jurisdiction to prosecute him. We considered and rejected the identical argument in United States v. Matta-Ballesteros, No. 91-50336, slip op. 15089, 15097-15103 (9th Cir. Dec. 1, 1995) decided contemporaneously with this appeal
 Matta also sought to file a supplemental brief at oral argument raising new arguments in favor of reversal. We decline to review these additional arguments.
 
 
 [2]
 None of Matta's five co-defendants were apprehended. Matta was the sole defendant to stand trial
 
 
 [3]
 Here, Matta's May 4, 1989 arraignment is the relevant date. His indictment was filed over a year earlier, on February 25, 1988
 
 
 [4]
 Matta's reliance on United States v. Nance, 666 F.2d 353 (9th Cir.), cert. denied, 456 U.S. 918 (1982); United States v. Brainer, 691 F.2d 691 (4th Cir.1982); and United States v. Hodges, 408 F.2d 543 (8th Cir.1969) are of no help to his claim. They did not concern delays, like the one here, resulting from other trials against the defendant
 
 
 [5]
 The government argues that Matta, who did not object to the wiretap evidence before trial, has waived his objections to it. See Fed.R.Crim.P. 12(b)(3), 12(f). But the district court entertained Matta's untimely suppression motion at trial, abrogating Matta's initial waiver of the objection. See United States v. Booker, 952 F.2d 247, 249 (9th Cir.1991)
 
 
 [6]
 Matta admits that "[i]f [the agents] knew anything it was about what was on the original recordings."
 
 
 [7]
 It is not true, however, that the government must prove who committed the crime
 
 
 [8]
 This version of Rule 35(a) applies to convictions for crimes committed before November 1, 1987. See Fed.R.Crim.P. 35 (West Supp.1992) (notes following rule)