**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**CERTAIN FUNDS CONTAINED IN ACCOUNT NOS. 600–306211–006, 600–306211–011 AND 600–306211–014 LOCATED AT the HONG KONG AND SHANGHAI BANKING CORPORATION, et al., Defendants,**

**Ko Sai–Man, Chui Kim–Chun,**
**Claimants–Appellees.**

**No. 2234, Docket 96–6125.**

United States Court of Appeals,
Second Circuit.

Argued July 15, 1996.
Decided Sept. 6, 1996.

Arthur P. Hui, Assistant United States Attorney, Eastern District of New York (Zachary W. Carter, United States Attorney, Varuni Nelson, Assistant United States Attorney, of counsel), for plaintiff–appellant.

Brian A. Sun, Santa Monica, California (Ellyn S. Garofalo, O'Neill, Lysaght & Sun, Santa Monica, California. Joseph W. Ryan, M. Elisabeth Bergeron, Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, Uniondale, New York, of counsel), for claimants–appellees.

Before: WINTER and CABRANES, Circuit Judges, and MOTLEY, District Judge.[*]

JOSÉ A. CABRANES, Circuit Judge:

In this appeal from a judgment for the appellees entered in the United States District Court for the Eastern District of New York (Denis R. Hurley, *Judge*), we are asked to decide whether 28 U.S.C. § 1355(b) ("section 1355(b)"), an amendment to the jurisdictional provisions of a civil forfeiture statute providing federal courts with jurisdiction over *res* located overseas, can be applied to an action begun before the effective date of the amendment. In addition, we consider whether so applying the amendment would present a likelihood of violating the Ex Post Facto Clause of the Constitution. In this effort we are guided by a recent decision of the Supreme Court that was not available to the district court when it rendered its decision. Finding that case dispositive, we hold that the amendment may be applied to civil forfeitures pending on the effective date of the amendment, and that it suffers no infirmity under the Ex Post Facto Clause. Accordingly, we reverse the judgment of the district court and remand for proceedings consistent with this opinion.

[*] The Honorable Constance Baker Motley, of the United States District Court for the Southern District of New York, sitting by designation.

## I. Background

The following facts, taken from the opinions of Judge Hurley and then-Magistrate Judge Allyne R. Ross, are not disputed by the parties. In this *in rem* proceeding, brought under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A), the Government seeks forfeiture of assets, valued at between 1.5 and 3 million dollars, located in Hong Kong. It alleges that the defendants *in rem* constitute proceeds of a conspiracy to import heroin into the United States and to launder the proceeds of that smuggling. The two claimants to the property, Ko Sai–Man and his wife, Chui Kim–Chun (jointly, "claimants"), are citizens and residents of Hong Kong. On September 4, 1991, Ko was acquitted in a Hong Kong court of charges of conspiracy to traffic in controlled substances. Chui was not prosecuted in Hong Kong and neither claimant was ever charged in a criminal prosecution in the United States. Immediately after the acquittal of Ko in Hong Kong, the defendant assets, which had been under restraint, were released by the High Court of Hong Kong. At the request of the United States, however, the Hong Kong Government immediately reinstated the seizure order, thereby keeping custody of the defendants *in rem* in anticipation of the instant forfeiture action. On September 20, 1991, the Government filed the Verified Complaint in this action in the Eastern District of New York. That complaint alleged that the claimants, and others, "engaged in a conspiracy to smuggle heroin from Hong Kong into the United States [through, among other places, John F. Kennedy International Airport in the Eastern District of New York] and to launder the proceeds of trafficking in heroin." The complaint further alleged that the various listed properties located in Hong Kong "constitute proceeds traceable to the sale, manufacture, transportation and/or distribution of a controlled substance . . . in violation of 21 U.S.C. § 841 *et seq.*" The complaint, warrant of arrest, and the first set of interrogatories directed to the claimants were sent to the Hong Kong Government. These documents were served by members of the Royal Hong Kong Police upon the two claimants.

The claimants filed their claim and answer *pro se* on October 15, 1991, in which they did not challenge the district court's jurisdiction over the *res*. On April 6, 1992, the claimants filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), requesting that the court dismiss the complaint for lack of jurisdiction over the *res* because the *res* was located outside the United States, and no statute conferred jurisdiction on the federal courts in these circumstances. The Government responded by asserting, *inter alia*, that the claimants had waived any such objections by failing to object to jurisdiction in their original claim and answer. In October 1992, while the claimants' motion was under advisement in the district court, the statute conferring jurisdiction on federal courts over civil forfeiture proceedings was amended to provide district courts with *in rem* jurisdiction over a *res* located in a foreign country. Anti–Money Laundering Act, Pub.L. No. 102–550, § 1521, 106 Stat. 4044, 4062 (codified at 28 U.S.C. § 1355(b)). 28 U.S.C. § 1355 was amended by adding a new part (b), which provides in pertinent part that

> [w]henever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought [in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred,] or in the United States District Court for the District of Columbia.

Following the enactment of this amendment, the parties presented arguments to the district court on the question of whether the statute applied retroactively and, in particular, whether it could be applied in the instant action.

In a Report and Recommendation filed November 16, 1993, Magistrate Judge Ross recommended granting claimants' motion for judgment on the pleadings, finding, *inter alia*, that the October 1992 amendment to 28 U.S.C. § 1355 did not apply retroactive-

ly.[1] She reasoned that there was nothing on the face of the amendment or in its legislative history to suggest that it should apply retroactively and, in addition, that such retroactive application "would raise grave constitutional questions concerning the Ex Post Facto Clause." Pursuant to FED.R.CIV.P. 72(b), the Government objected to the magistrate judge's report and recommendations, and Judge Hurley, upon *de novo* review, adopted the report and recommendation, granting claimants' motion for judgment on the pleadings and dismissing the civil forfeiture action. In granting the claimants' motion, Judge Hurley started from the premise, enunciated in a recent Supreme Court case, that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, ——, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). He recognized, however, that this presumption can be overcome by a clear showing of congressional intent to make the new statute retroactive. He then found that the legislative history of section 1355(b) revealed no such intent. Judge Hurley also rejected the government's argument that retroactive application of the statute would not violate the Ex Post Facto Clause of the Constitution.[2] Quoting from *Louis Vuitton S.A. v. Spencer Handbags*, 765 F.2d 966, 971 (2d Cir.1985), Judge Hurley relied on "[c]lear Second Circuit precedent [that] indicates that where retroactive application of a statute would raise 'even a spectre of a constitutional issue,' a court will choose to apply a statute prospectively in order to avoid that issue." Finding no authority to support the Government's argument that the retroactive application of section 1355(b) would raise no Ex Post Facto Clause issue, the district court held that the statute did not apply retroactively and dismissed the complaint.

This appeal followed. After the district court denied the government's motion to stay execution of judgment, we granted a stay pending this expedited appeal on the sole issue of whether section 1355(b) can be applied retroactively to this case. We now reverse.

## II. DISCUSSION

■ We review *de novo* the dismissal of an action on the pleadings. *See, e.g., Comer v. Cisneros*, 37 F.3d 775, 786 (2d Cir.1994). Accordingly, we consider, in turn, the district court's conclusion that section 1355(b) should not apply to the instant case because of a general presumption against the retroactive application of legislation and, in addition, because such retroactive application in the instant case would raise a constitutional issue under the Ex Post Facto Clause.

### A. *Retroactivity*

■ In determining whether a statute should apply to cases pending at the time of its passage, the courts are now guided by the Supreme Court's recent decision in *Landgraf*. In that case, the Supreme Court held that sections of the Civil Rights Act of 1991, Pub.L. 102–166, 105 Stat. 1071, creating a right to recover compensatory and punitive damages for certain violations of Title VII, and providing for a trial by jury where such damages are sought, did not apply to a case that was pending on appeal when the statute was enacted. In particular, by reconciling two seemingly contradictory canons of judicial interpretation on the question of retroactivity, *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.") and *Bradley v. Richmond Sch. Bd.*, 416 U.S. 696,

---

1. Relying largely on the *pro se* status of the claimants at the time of filing their claim and answer, the magistrate judge recommended, and the district judge agreed, that the claimants had not waived their jurisdictional objections. This expedited appeal only concerns the merits of the question of the retroactivity of 28 U.S.C. § 1355(b).

2. "No ... ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3. The phrase "ex post facto" is translated as "after the fact." BLACK'S LAW DICTIONARY 580 (6th ed. 1990).

711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) ("[A] court is to apply the law in effect at the time it renders its decision...."), *Landgraf* presented a method for determining whether a statute may be applied to conduct that took place before its enactment in the absence of clear congressional intent. Essentially, a court should not apply a statute to such conduct if a "new provision attaches new legal consequences to events completed before its enactment," *Landgraf*, 511 U.S. at ——, 114 S.Ct. at 1499, and the new statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at ——, 114 S.Ct. at 1505. Because neither the language of section 1355(b) nor its legislative history provide any guidance as to whether it should apply to cases pending at the time of its passage, we now apply these criteria.

■ We conclude that section 1355(b), if applied in this case, would not take away any rights possessed by a party, increase liability, or attach new legal consequences to past conduct. The claimants never had any right to property resulting from illegal gains, and their alleged drug smuggling and money laundering have always carried criminal penalties. One of the legal consequences of drug smuggling or money laundering is that the resulting illegal proceeds are subject to forfeiture to the government. *See, e.g.,* 18 U.S.C. § 981 (providing for civil forfeiture of property involved in money laundering); 21 U.S.C § 881 (providing for civil forfeiture of property involved in or derived from violation of drug laws). "To the extent that [the underlying civil forfeiture statute] applies to 'proceeds' of illegal drug activity, it serves the additional nonpunitive goal of ensuring that persons do not profit from their illegal acts." *United States v. Ursery,* —— U.S. ——, —— – ——, 116 S.Ct. 2135, 2148–49, 135 L.Ed.2d 549 (1996). The mere fact that

people who commit crimes within the jurisdiction of the United States manage to secrete proceeds of those crimes out of the country does not mean that they enjoy any greater rights to those proceeds. Accordingly, it cannot be said that section 1355(b) ever created any new legal consequences or impaired any existing rights.[3] In these circumstances, retroactive application of the statute is permissible.

Section 1355(b), in any event, is not a forfeiture statute *per se;* it is a procedural statute. The *Landgraf* Court itself noted that procedural rules "may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1502. There are "diminished reliance interests in matters of procedure .... [b]ecause rules of procedure regulate secondary rather than primary conduct." *Id.* (citations omitted). The secondary conduct here is the court's power—its jurisdiction—over the *res* located overseas. Quintessentially procedural, jurisdiction statutes have often been accorded retroactive application. The Supreme Court has "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Id.* at ——, 114 S.Ct. at 1501. "Application of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.' " *Id.* at ——, 114 S.Ct. at 1502 (quoting *Hallowell v. Commons,* 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916), and *Republic Nat. Bank v. United States,* 506 U.S. 80, 100, 113 S.Ct. 554, 565, 121 L.Ed.2d 474 (1992) (Thomas, J, concurring)); *see also Hincapie-Nieto v. INS,* 92 F.3d 27, 29–30 (2d Cir.1996) (applying *Landgraf's* retroactivity analysis to jurisdiction-eliminating provision of the Anti-

---

3. In *Landgraf,* a case concerning a Title VII claim that arose before passage of the 1991 Civil Rights Act ("Act"), the Court noted that it would have been unfair to assess damages even though the underlying conduct had "been unlawful for more than a generation." *Landgraf,* 511 U.S. at ——, n. 35, 114 S.Ct. at 1506, n. 35. The em-

ployer in *Landgraf* had never been liable for damages prior to the passage of the Act. In contrast, in the instant case, the claimants were at all relevant times on notice that any proceeds from money laundering or drug transactions within the jurisdiction of United States courts were subject to forfeiture.

terrorism and Effective Death Penalty Act of 1996).

In sum, the amendment to 28 U.S.C. § 1355 is not one of the class of statutes that " 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past,' " *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1499 (quoting *Society for the Propagation of the Gospel v. Wheeler,* 22 F. Cas. 756, 767 (C.C.D.N.H. 1814) (No. 13,156)), nor does it affect transactions in which "predictability and stability are of prime importance." *Id.* at ——, 114 S.Ct. at 1500. Accordingly, absent any constitutional infirmity, section 1355(b) may be applied in the instant case.

## B. *The Ex Post Facto Clause*

The district court also concluded that the application of section 1355(b) to a case pending at the time of its enactment might raise problems under the Ex Post Facto Clause of the Constitution. While the Ex Post Facto Clause's proscription on the retroactive application of legislation is "applicable *only* to penal legislation," *Landgraf,* 511 U.S. at ——, n. 19, 114 S.Ct. at 1497, n. 19 (emphasis added); *see also Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798), the district court determined that the application of section 1355(b) in the instant case may be "penal" inasmuch as assets not previously subject to forfeiture would now, by virtue of the 1992 amendment, be vulnerable to forfeiture. The court concluded that the Supreme Court's decision in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), defining punishment in relation to civil forfeitures, "raise[s] grave doubts concerning the constitutionality of retroactively applying 28 U.S.C. § 1355(b)—rendering subject to *in rem* forfeiture assets previously free from monetary punishment." The district court did not reach a definitive conclusion on this question because, it asserted, "[c]lear Second Circuit precedent indicates that where retroactive application of a statute would raise 'even a spectre of a constitutional issue,' a court will choose to apply a statute prospectively in order to avoid that issue." (quoting *Louis Vuitton,* 765 F.2d at 971 (internal quotation marks and citation omitted)). A clearer expression of this principle is found elsewhere in *Louis Vuitton*— that "[r]esolution of the constitutional issue need not be certain; there need only be a 'substantial doubt,' or an indication that the constitutional question is 'non-frivolous.' " *Louis Vuitton,* 765 F.2d at 971 (quoting *United States v. Security Indus. Bank,* 459 U.S. 70, 78, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982), and *In Re Ashe,* 712 F.2d 864, 865–66 (3d Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984)). We turn, therefore, to the question of whether there is any "substantial doubt" that the retroactive application of section 1355(b) can survive a challenge under the Ex Post Facto Clause.

The district court's consideration of whether application of section 1355(b) in the instant case would be compatible with the Ex Post Facto Clause relied on the Supreme Court's analysis of civil forfeiture in *Austin,* in which the Court held that, under the Excessive Fines Clause of the Eighth Amendment, civil forfeiture constitutes "punishment" and that "the question is not ... whether [civil] forfeiture ... is civil or criminal, but rather whether it is punishment." *Austin,* 509 U.S. at 610, 113 S.Ct. at 2806. *Austin* conveyed the impression to many federal courts that civil forfeiture should also be considered "punishment" for purposes of the Double Jeopardy Clause of the Fifth Amendment. *See, e.g., United States v. Idowu,* 74 F.3d 387, 393 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 1888, 135 L.Ed.2d 182 (1996). That impression led the district court in the instant case to conclude that the forfeiture statutes at issue here were punitive, and therefore "criminal" or "penal" for purposes of the Ex Post Facto Clause as well.

More than three years after the district court rendered its judgment in this case, and just three weeks prior to oral argument before us, the Supreme Court handed down a decision, *Ursery,* —— U.S. at ——, 116 S.Ct. at 2135, that clarified and limited its prior holding in *Austin.* In holding that civil *in rem* forfeiture is not "punishment" for purposes of the Double Jeopardy Clause, the Court limited *Austin* 's holding to the Exces-

sive Fines Clause. *Ursery*, —— U.S. at ——, ——, 116 S.Ct. at 2147, 2149.[4] Accordingly, *Ursery* has effectively repudiated the district court's impression that *Austin* "found civil forfeiture actions punitive in nature" and that retroactive application of such statutes could violate the Ex Post Facto Clause. The question remaining, therefore, is whether the district court's holding that retroactive application of section 1355(b) could violate the Ex Post Facto Clause survives the Supreme Court's decision in *Ursery*. If it can be shown that the relevant civil forfeiture statutes in the instant case are not penal or criminal, then there cannot be a "substantial doubt" as to their compatibility with the Ex Post Facto Clause.

As we have noted above, section 1355(b) is a procedural provision, designed to confer jurisdiction on the district courts to entertain forfeiture actions for property located overseas. The only way that section 1355(b) could possibly fall under the prohibition of the Ex Post Facto Clause would be if the underlying forfeiture statutes, 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6), could be classified as "criminal" or "penal." 18 U.S.C. § 981(a)(1)(A) provides, in pertinent part, that

> [a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [money laundering and reporting statutes], or any property traceable to such property [shall be subject to forfeiture to the United States].

21 U.S.C. § 881(a)(6) provides, in pertinent part, that

> [a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter [shall be subject to forfeiture to the United States and no property right shall exist in them].

When examining whether *in rem* forfeiture proceedings were "criminal" or "civil," the Supreme Court in *Ursery* applied a two-part test: first, the Court considered congressional intent, and, second, it asked whether the forfeitures at issue were so punitive as to be considered "penal." *Ursery*, —— U.S. at ——, 116 S.Ct. at 2147. Although *Ursery* dealt with the Double Jeopardy Clause, the same analysis is equally applicable to a determination of whether the underlying statutes in the instant case are criminal or penal for purposes of the Ex Post Facto Clause. The *Ursery* Court's analysis is particularly relevant because two out of the three statutes analyzed in *Ursery* were the same as the underlying statutes in this case—namely, 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A).

■ In asking "whether Congress intended proceedings under 21 U.S.C. § 881, and 18 U.S.C. § 981, to be criminal or civil," the Court noted numerous procedural factors associated with forfeiture statutes that are indicators of whether the statutes were intended to be civil or criminal. *Ursery*, —— U.S. at ——–——, 116 S.Ct. at 2147–48 (noting that civil forfeitures are *in rem*, whereas criminal proceedings are *in personam* in nature; that lack of notice requirements and summary procedures typical of civil forfeitures are not usual in criminal proceedings; and that civil action burdens of proof are employed in civil forfeitures, as opposed to the more onerous criminal burdens of proof used in criminal actions). "In sum, by creating such distinctly civil procedures for forfeitures under § 881 and § 981, Congress has indicated clearly that it intended a civil, not a criminal sanction." *Id.* at ——, 116 S.Ct. at 2148 (alterations, internal quotation marks, and citations omitted).

In applying the second part of the test— "whether the proceedings are so punitive in fact as to 'persuade [the Court] that the forfeiture proceeding[s] may not legitimately

---

**4.** In distinguishing the holding of *Austin,* the Court in *Ursery* held that *Austin* "was decided solely under the Excessive Fines Clause of the Eighth Amendment, a constitutional provision which we never have understood as parallel to, or even related to, the Double Jeopardy Clause of the Fifth Amendment." *Ursery*, —— U.S. at ——, 116 S.Ct. at 2146. Similarly, there has never been an understanding that the Excessive Fines Clause and the Ex Post Facto Clause are "parallel" or "related."

be viewed as civil in nature,' despite Congress' intent," *id.* at ——, 116 S.Ct. at 2147 (quoting *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 366, 104 S.Ct. 1099, 1107, 79 L.Ed.2d 361 (1984) (alterations in *Ursery* ))—the Supreme Court found "little evidence ... that forfeiture proceedings under 21 U.S.C. §§ 881(a)(6) and (a)(7), and 18 U.S.C. § 981(a)(1)(A), are so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." *Id.* at ——, 116 S.Ct. at 2148. In so doing, the Court relied on its prior decisions in civil forfeiture cases. *See Various Items of Personal Property v. United States,* 282 U.S. 577, 581, 51 S.Ct. 282, 284, 75 L.Ed. 558 (1931) ("The forfeiture is no part of the punishment for the criminal offense."); *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 234–35, 93 S.Ct. 489, 491–92, 34 L.Ed.2d 438 (1972) (per curiam) (distinguishing between civil forfeiture statutes and related criminal statute); *89 Firearms,* 465 U.S. at 366, 104 S.Ct. at 1107 (civil forfeiture under 18 U.S.C. § 924(d), providing for forfeiture of firearms involved in unlawful acts, is "not an additional penalty for the commission of a criminal act, but rather is a separate civil sanction, remedial in nature"). It found that "[21 U.S.C. §§ 881(a)(6), 881(a)(7), and 18 U.S.C. § 981(a)(1)(A) ] are, in most significant respects, indistinguishable from those reviewed [in the three cases listed above]." *Ursery,* —— U.S. at ——, 116 S.Ct. at 2148. In addition, the Court found the connection between these forfeiture statutes and criminal laws "insufficient to render the statutes punitive." *Id.* at ——, 116 S.Ct. at 2149. Having found that the forfeiture statutes failed both parts of the test, the Court concluded that the statutes were "civil" for purposes of the Double Jeopardy Clause. We now conclude, on the basis of the analysis in *Ursery,* that 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6) are not "penal" for purposes of the Ex Post Facto Clause and, in

turn, that section 1355(b), the statute providing jurisdiction for their enforcement, cannot be "criminal" for purposes of that Clause.[5] Accordingly, there can be no "substantial doubt," or even the "spectre" of an unconstitutional issue, haunting the retroactive application of 28 U.S.C. § 1355(b).

### III. CONCLUSION

To summarize:

(1) Because we hold that the amendment to 28 U.S.C. § 1355 did not create any new liabilities, take away any vested rights, or impose new legal consequences for past conduct, we conclude that, absent any impediment posed by the Ex Post Facto Clause, the jurisdictional amendment to 28 U.S.C. § 1355—providing federal courts with jurisdiction over *res* located overseas—can be applied to civil forfeiture proceedings pending when the amendment became effective.

(2) Because this new provision, 28 U.S.C. § 1355(b), confers jurisdiction on the district court in the enforcement of civil forfeiture statutes that are not "penal" for purposes of Ex Post Facto Clause, its retroactive application would not raise a "substantial doubt" as to the constitutionality of section 1355(b) under the Ex Post Facto Clause.

Accordingly, the order of the district court granting the claimants' motion for judgment on the pleadings is reversed and the cause is remanded for further proceedings consistent with this opinion.

---

5.  Our decision today, that retroactive application of 28 U.S.C. § 1355(b) in the instant action is not prohibited by the Ex Post Facto Clause, finds support in similar decisions in other circuits dealing with the Ex Post Facto Clause and civil forfeiture. *See, e.g., United States v. D.K.G. Appaloosas, Inc.,* 829 F.2d 532, 544–45 (5th Cir.1987) ("[21 U.S.C. § 881(a)(6) ] is ... in both purpose and effect primarily a remedial, civil forfeiture provision, ... the *ex post facto* clause of the Constitution does not apply to it."), *cert. denied,* 485 U.S. 976, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988); *see also United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d 1357, 1364 n. 8 (9th Cir.1986) (same, regarding 21 U.S.C. § 881(h)).