**UNITED STATES of America,**
**Appellee,**

v.

**ALL FUNDS IN ACCOUNT NOS.**
**747.034/278, 747.009/278, & 747.714/278**
**BANCO ESPANOL DE CREDITO,**
**SPAIN, Appellee.**

**Nancy Marlene Vasquez–**
**Martinez, Appellant.**

**No. 01–5220.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 25, 2002.
Decided July 12, 2002.

Raymond A. Connell argued the cause and filed the briefs for appellant.

Laurel Loomis, Attorney, U.S. Department of Justice, argued the cause and filed the brief for appellee.

Before: SENTELLE, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

This is an appeal from the judgment of the district court in favor of the United States in a civil forfeiture action. The government brought the action pursuant to 28 U.S.C. § 1355 and 21 U.S.C. § 881 against $4.6 million on deposit at the Banco Espanol de Credito in Madrid, Spain. The claimant, Nancy Marlene Vasquez–Martinez, intervened and argued that the court had no jurisdiction because the property was outside the court's territorial jurisdiction and because the five-year statute of limitations had run. *See* 19 U.S.C. § 1621.

Vasquez is the wife of Juan Ramon Matta, the leader and organizer of a crime ring that smuggled massive quantities of cocaine into the United States in the 1980s. *See, e.g., United States v. Matta–Ballesteros*, No. 91–50165, 1995 WL 746007 (9th Cir. Dec. 15, 1995) (per curiam). Matta is currently imprisoned in a federal penitentiary. The $4.6 million, contained in three accounts at the Banco Espanol, is derived from Matta's criminal operations. *See United States v. All Funds in Account Nos. 747.034/278, 747.009/278, &*

*747.714/278 in Banco Espanol de Credito, Spain,* 141 F.Supp.2d 548, 549 (D.D.C. 2001) [hereinafter *Banco Espanol*].

Civil forfeiture actions are brought against property, not people. The owner of the property may intervene to protect his interest. Forfeiture is an ancient penalty; its origins can be traced to Biblical times. *See generally Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680–90, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), *citing* Exodus 21:28 ("If a bull gores a man or a woman to death, the bull must be stoned to death, and its meat must not be eaten. But the owner of the bull will not be held responsible."). Although the American common law did not adopt forfeiture as a penalty, early federal statutes authorized its imposition for violations of customs laws and revenue laws. *Id.* at 683, 94 S.Ct. at 2091–92. In exercising *in rem* jurisdiction, the court has authority over the property (the *res*) and may adjudicate claims of ownership. Traditionally, the property had to be present within the court's territorial jurisdiction.

Even though the $4.6 million is outside of the United States, the district court determined it had "constructive possession" of the bank accounts because the record demonstrated "a degree of cooperation" such that a forfeiture order from the court would likely be enforced by the Kingdom of Spain. *Banco Espanol,* 141 F.Supp.2d at 551. The district court also held that the statute of limitations had been tolled. For one of the bank accounts, containing $985,000 and first discovered in 1992, the court held that the statute of limitations did not begin to run until 1993, the effective date of the bilateral treaty between the United States and Spain providing for cooperation in the seizure of drug proceeds. *See* Treaty on Mutual Legal Assistance in Criminal Matters, Nov. 20, 1990, U.S.–Spain, 1730 U.N.T.S. 113;

*Banco Espanol,* 141 F.Supp.2d at 553–54. The other two bank accounts were not discovered until 1999. As to these accounts, the court ruled that the funds had been concealed. Concealment tolls the running of the limitations period for civil forfeiture. 19 U.S.C. § 1621(2).

Congress declared that "no property right shall exist" in "all proceeds traceable" to illegal drug sales. 21 U.S.C. § 881(a)(6). Both parties concede that the money at Banco Espanol was earned through illegal narcotics activity, and—if a United States court can order its forfeiture—then the money must be forfeit. Vasquez claims that long-standing precedent requires the district court to have possession of the *res* before it may exercise *in rem* jurisdiction. For instance, *The Brig Ann,* 13 U.S. (9 Cranch) 289, 291, 3 L.Ed. 734 (1815) (Story, J.), an admiralty case, held that in "order to institute and perfect proceedings *in rem,* it is necessary that the thing should be actually or constructively within the reach of the Court." *See, e.g., La Vengeance,* 3 U.S. (3 Dall.) 297, 1 L.Ed. 610 (1796).

The forfeiture provisions for drug proceeds adopt the traditional requirements "for violations of the customs laws" but only "insofar as applicable and not inconsistent" with the drug forfeiture laws. 21 U.S.C. § 881(d). To the Second Circuit, the traditional requirement that the property be present within the court's territorial jurisdiction applies in drug forfeiture cases, but this may be satisfied through the court's "constructive possession" of the property whenever the government has "demonstrated cooperation" such that the orders of a United States court will be carried into effect by foreign government officials. *United States v. All Funds on Deposit in any Accounts Maintained in the Names of Heriberto Castro Meza,* 63 F.3d 148, 153–54 (2d Cir.1995). Following

the Second Circuit's approach, the district court found that the "history of cooperation between authorities in the United States and Spain" gave it jurisdiction. 141 F.Supp.2d at 552.

The general statute governing forfeiture actions states that "[u]nless otherwise provided by Act of Congress ... in cases of seizures on land the forfeiture may be enforced by a proceeding in libel which shall conform as near as may be to proceedings in admiralty." 28 U.S.C. § 2461(b). If this were the only statute providing jurisdiction, we too would have little doubt that traditional rules of *in rem* jurisdiction developed under admiralty law would apply. But in 1992, Congress provided that "[w]henever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought ... in the United States District court for the District of Columbia." 28 U.S.C. § 1355(b)(2).

The claimant argues that this statute merely provides *venue* in the district court, rather than jurisdiction over foreign assets. Subsection (d) of the same statute, however, specifically refers to "[a]ny court with jurisdiction over a forfeiture action pursuant to subsection (b)...." 28 U.S.C. § 1355(d). It would make little sense for Congress to provide venue in a district court if there were no means for that court to exercise jurisdiction. The claimant answers that a foreign country might transfer the property to the District of Columbia. But this does not explain the statute's reference to property "*located* in a foreign country." 28 U.S.C. § 1355(b) (emphasis added).

Senator D'Amato introduced S.1665, the Money Laundering Improvements Act, containing the language eventually enacted as 28 U.S.C. § 1355(b). His explanatory statement indicates that he, at least, meant to give the district courts jurisdiction over the forfeiture of assets located in foreign countries:

> Subsection (b)(2) addresses a problem that arises whenever property subject to forfeiture under the laws of the United States is located in a foreign country. As mentioned, under current law, it is probably no longer necessary to base in rem jurisdiction on the location of the property if there have been sufficient contacts with the district in which the suit is filed. See *United States v. $10,000 in U.S. Currency,* [860 F.2d 1511 (9th Cir.1988)]. No statute, however, says this, and the issue has to be repeatedly litigated whenever a foreign government is willing to give effect to a forfeiture order issued by a United States court and turn over seized property to the United States if only the United States is able to obtain such an order.

> Subsection (b)(2) resolves this problem by providing for jurisdiction over such property in the United States District Court for the District of Columbia, in the district court for the district in which any of the acts giving rise to the forfeiture occurred, or in any other district where venue would be appropriate under a venue-for-forfeiture statute.

\* \* \*

137 CONG. REC. 21,995, 21,998 (1991).

Although the Second Circuit in *Meza,* 63 F.3d at 152, held that jurisdiction was not available under 28 U.S.C. § 1355 and therefore applied the traditional rules of admiralty, a year later the Second Circuit concluded that the 1992 amendments "provide district courts with *in rem* jurisdiction over a *res* located in a foreign country."

*United States v. Certain Funds Located at the Hong Kong & Shanghai Banking Corp.*, 96 F.3d 20, 22 (2d Cir.1996) [hereinafter *Hong Kong Banking*]. The court of appeals went on to hold that the jurisdictional amendments could be applied retroactively to forfeiture actions begun before their enactment. *Id.*

■ We find ourselves in agreement with *Hong Kong Banking*. Congress intended the District Court for the District of Columbia, among others, to have jurisdiction to order the forfeiture of property located in foreign countries. Unless the Constitution commands otherwise–and the claimant has raised no constitutional objections at all–the statute must be enforced.* It may well be that a forfeiture order of a United States court will not have its full effect until the *res*—the money—is brought within the territory of the United States. *Cf. R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964–66 (4th Cir.1999). Spain may be expected to live up to its treaty obligations, even if it would not otherwise be required to effectuate the judgments of United States courts. But Spain's compliance and cooperation determines only the effectiveness of the forfeiture orders of the district courts, not their jurisdiction to issue those orders.

■ The remaining issue is whether the action was brought within the limitations period. The general statute of limitations for forfeiture actions in admiralty, 19 U.S.C. § 1621, applies to the forfeiture of drug proceeds. *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 63, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). Under that provision, the limitations period is five years from discovery of the offense. The statute is tolled during "any concealment or absence of the property," *id.* We conclude that the statute of limitations had not run on any of the accounts in Spain, although for reasons different than those given by the district court. The $4.6 million was outside the United States. This action therefore commenced during the "absence of the property." The claimant argues that property cannot be absent unless it was first in this country and then removed. There is no particular reason, at least none the claimant has offered, for stretching the word "absence" to mean something other than not present. If Congress had meant what the claimant suggests, we would expect some reference in the statute to the act of removal, but there is none. When we ask why Congress would have wanted to toll the limitations period for drug profits removed from this country but not for payments deposited directly in foreign accounts, no sensible answer comes to mind. Nor do we believe property in a foreign country is no longer absent from the United States simply because a foreign government is willing to assist a forfeiture action seeking its return. In short, when property is not here it is absent. We recognize that our reading tolls the running of the limitations period indefinitely for bringing actions against drug proceeds located in foreign countries. But given the uncertainties of foreign cooperation, Congress may not have wanted to force the government to bring forfeiture proceedings within five years to recover such property. Because the limitations period was tolled on all three accounts in Spain, we do not

---

* On appeal, Vasquez also argued that the district court lacked jurisdiction because Congress did not provide for service of process in foreign countries. But the district court issued a warrant for arrest *in rem*, and a Spanish court restrained the funds pursuant to a request from the Spanish government. And Vasquez had notice and an opportunity to be heard in this forfeiture proceeding, so we need not consider whether her status as a foreign national outside the United States precludes any constitutional claims.

reach the district court's holding that two of the accounts were also concealed.

*Affirmed.*