FLOYD, Circuit Judge,
dissenting:
The majority concludes that a district court may properly enter a forfeiture order against property entirely outside of the United States after barring foreign Claimants — who are also entirely outside of the United States — from defending the *436 government’s forfeiture claim. I respectfully dissent because I conclude Article Ill’s prohibition against advisory opinions precludes the exercise of in rem jurisdiction over a res, including real property, entirely outside of the United States and beyond the control of the district court.
I.
I agree with the majority that 28 U.S.C. § 1355 is a jurisdictional statute. In enacting § 1355, Congress intended to fundamentally alter the law regarding in rem jurisdiction. But see United States v. All Funds on Deposit in Any Accounts Maintained in Names of Meza or De Castro, 63 F.3d 148, 152 (2d Cir. 1995) (reaching the opposite conclusion, i.e., that § 1355 is a venue statute, not a jurisdictional one). Congress hoped to abolish the traditional requirement of in rem jurisdiction that a court have actual or constructive control over the res. Compare 28 U.S.C. § 2461(b) (providing that “[ujnless otherwise provided by Act of Congress ... in cases of seizures on land the forfeiture may be enforced by a proceeding by libel which shall conform as near as may be to proceedings in admiralty”[1]), with 28 U.S.C. § 1355(a), (b)(2) (providing district courts “original jurisdiction” over forfeiture actions concerning property “located in a foreign country”). A congressional grant of jurisdiction to the courts remains, however, subject to constitutional constraints on the federal judicial power. My objection to the ruling of the district court, and to the holding of the majority, is not grounded in an objection to its claim of jurisdiction over the res pursuant to Congress’s grant of that jurisdiction, but is rather grounded in justiciability concerns arising from Article III.[2]
“The jurisdiction of federal courts is defined and limited by Article III of the Constitution.” Flast v. Cohen, 392 U.S. 83, 94, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Article III limits federal courts to deciding “cases” and “controversies.” See U.S. Const. art. Ill, § 2. These two words “have an iceberg quality, containing beneath their surface simplicity submerged complexities which go to the very heart of our constitutional form of government.” Flast, 392 U.S. at 94, 88 S.Ct. 1942. Courts developed concepts of justiciability to express the limitations placed upon federal courts by Article Ill’s case or controversy requirement. See id. at 95, 88 S.Ct. 1942.
As one commentator cited by the majority notes, cases brought pursuant to § 1355(b)(2) implicate two distinct but related constitutional justiciability requirements — bindingness and redressability. See Courtney J. Linn, International Asset Forfeiture and the Constitution: The Limits of Forfeiture Jurisdiction Over Foreign Assets Under 28 U.S.C. § 1355(b)(2), 31 Am. J. Crim. L. 251, 297-99 (2004). In my view, bindingness presents the most serious problem here.[3]
*437 II.
The opinions of federal courts must be final and binding on the parties. “ ‘[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.’” Flast, 392 U.S. at 96, 88 S.Ct. 1942 (quotation omitted). Article III courts cannot render decisions subject to revision by another branch of government. See, e.g., Chi. & S. Air Lines v. Waterman S.S. Corp., 333 U.S. 103, 113, 68 S.Ct. 431, 92 L.Ed. 568 (1948) (“Judgments, within the powers vested in courts by the Judiciary Article of the Constitution, may not lawfully be revised, overturned or refused faith and credit by another Department of Government.”); Hayburn’s Case, 2 Dall. 409, 410 n*, 2 U.S. 408, 1 L.Ed. 436 (1792) (opinion of Wilson and Blair,' JJ., and Peters, D.J.) (“[R]evision and control” of Ar-. tide III judgments is “radically inconsistent with the independence of that judicial power which is vested in the courts”).
The advisory opinion prohibition is founded on the principle that federal courts may only issue judgments that are binding and conclusive on the parties. See Waterman, 333 U.S. at 113-14, 68 S.Ct. 431; Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249, 261-62, 53 S.Ct. 345, 77 L.Ed. 730 (1933) (explaining that a case was justiciable when it sought a “definitive adjudication” of a disputed right that would not be “subject to revision by some other and more authoritative agency”); Gordon v. United States, 69 U.S. 2 Wall. 561, 561, 17 L.Ed. 921 (1864) (noting that the Constitution forbids federal courts from expressing opinions on a case “where its judgment would not be final and conclusive upon the rights of the parties”).[4] The revision of a court’s judgment by “some other and more authoritative agency” renders the judgment an advisory opinion prohibited by Article III. See Wallace, 288 U.S. at 262, 53 S.Ct. 345.
The majority side-steps this concern by cabining it to the separation of powers context. One of the basic tenets of what constitutes a “case or controversy” cannot be elided so. The defendant in this action — the res — is outside of the United States and beyond the control of the district court. Absent control, no order of the district court can be binding on the res because the fate of the res is ultimately not in the hands of the district court. In *438 stead, the res in this case is subject to the control of the courts of New Zealand and Hong Kong. The district court’s forfeiture order therefore merely advises the courts of a foreign sovereign that (in the district court’s view under the laws of the United States) the United States should have title to the res. Those courts, of course, with control of the res and with the authority vested in them by their own sovereigns, remain free to revise, overturn, or refuse recognition to the judgment of the district court. The decision of the district court regarding title in the res is thus subject to a “more authoritative agency” outside of the Article III hierarchy. Without control of the res, the district court’s decision cannot bind the res and thus constitutes an advisory opinion prohibited by Article III.
The risk of revision to the district court’s judgment is no mere hypothetical. As the government notes, “[djespite the registration of the restraints, the New Zealand courts released” over $5 million for legal fees and living expenses. Gov’t’s Br. 7. Additionally, even after receiving the “final” forfeiture order from the district court, New Zealand courts granted Dotcom monthly releases of $135,000 for living expenses. Id. at n.5. In fact, the district court recognized that the foreign courts “may or may not” register its order and that “New Zealand courts may continue to litigate the issue of whether the assets will be forfeited.” J.A. 1982. The government also concedes that “even with a valid forfeiture order, the fugitive’s property may suffer no adverse effect.” Gov’t’s Br. 20 n.13. In an in rem action, the district court cannot issue a judgment binding the res absent control of the res. Where, as here, a foreign sovereign controls the res because the res is located abroad, any in rem forfeiture order by a district court constitutes advice to the foreign sovereign regarding how it should vest title to the res.
III.
Our own precedent recognizes the Article III limits of in rem jurisdiction. We explored the interplay at length in our Titanic decisions. R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943 (4th Cir. 1999) (Titanic I); R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel, 435 F.3d 521 (4th Cir. 2006) (Titanic II). The Titanic cases involved disputes concerning the law of salvage as it applied to the wreck of the British passenger liner R.M.S. Titanic, which sank in the North Atlantic Ocean in 1912. As the majority notes, ante, at 421-22, the eases arose in admiralty and applied maritime law, and I readily accept that § 1355 attempts to divorce the in rem actions it authorizes from the traditional in rem principles of admiralty law. However, I part ways with the majority because I read the Titanic cases to contain principles both of admiralty law and of constitutional law.
What makes in rem actions problematic from an Article III standpoint is that “judgments in them operate against anyone in the world claiming against that property.” Titanic I, 171 F.3d at 957. Without control of the property, the judgment cannot “operate against anyone in the world” claiming interest in the defendant property. Id. “Only if the court has exclusive custody and control over the property does it have jurisdiction over the property so as to be able to adjudicate rights in it that are binding against the world.” Id. at 964 (emphasis added). When, as here, the res is not in the court’s possession, “the court may not adjudicate rights to the res and effectively bind others who may have possession. Consequently, a court could not exercise in rem jurisdiction, as traditionally understood, so as to vest rights in property outside of its territory ....” Id. *439 (citation omitted). “In rem jurisdiction, which depends on sovereignty over property, cannot be given effect to property beyond a nation’s boundaries of sovereignty.” Id. at 966. Simply put, the res in this case is beyond the United States’ sovereign territory and our courts cannot — absent control of the res — declare rights in it that are binding against the world.
Our decision in Titanic I emphasizes the importance of sovereignty — and control— for in rem actions. In Titanic I, we found the exercise of in rem jurisdiction proper because the court had constructive control over the wreck because it had a portion of the wreck in its control. The main body of the wreck itself was located in international waters, i.e., beyond the sovereign limits of any nation. Thus, although “the exclusiveness of any [in rem] order could legitimately be questioned by any other court in admiralty,” we concluded that the court could, nonetheless, exercise an “ ‘imperfect’ or ‘inchoate’ in rem jurisdiction which falls short of giving the court sovereignty over the wreck.” Id. at 967.
As Titanic II makes clear, the court’s exercise of power in Titanic I was possible only because the wreck was outside the territorial limits of another sovereign. In Titanic II we announced the limits of constructive in rem jurisdiction grounded in the boundaries imposed upon courts by territorial sovereignty. We held that a court cannot exercise in rem or constructive in rem jurisdiction over property within the sovereign limits of other nations. Titanic II, 435 F.3d at 530. We held that a party “cannot come to a court in the United States and simply assert that the court should declare rights against the world as to property located in a foreign country.” Id. That is precisely what the government attempts to do in this case.
The majority is correct that the Titanic cases applied the traditional, admiralty-based law of in rem jurisdiction and is also correct that § 1355 attempted to alter that traditional law. What the majority fails to recognize, however, is that the traditional limits of in rem jurisdiction are also commanded by the Constitution’s requirement that judgments by Article III courts be binding on the parties. Needless to say, this requirement cannot be waived by statute. Because the res is a party and because the judgment purports to adjudicate rights in the rescinding against the whole world, control of the res is the sine qua non of in rem actions. Absent control, the court’s judgment cannot bind the property but, instead, merely advises the foreign sovereign that does control the property as to how a United States court believes the rights in the property should be settled.
The possible cooperation of the foreign sovereign is irrelevant, contrary to the weight the district court and the majority place on that variable. Unlike the question of redressability, which is indeed a matter of probabilities, the requirement that a judgment be binding and conclusive on the parties is absolute. Consider the circumstances of Waterman, which articulated bindingness as an essential requirement of Article Ill’s judicial power. In Waterman, the court of appeals determined that it had jurisdiction to review an order of the Civil Aeronautics Board awarding an overseas air route. 333 U.S. at 104-05, 68 S.Ct. 431. By statute, such orders were subject to presidential approval and the order in question had been approved by the President. Id. at 110-11, 68 S.Ct. 431. The court of appeals determined that even after it reviewed the Board’s order, its review would remain subject to the approval or disapproval of the President. Id. at 113, 68 S.Ct. 431. The Supreme Court held the judgment of the court of appeals to be advisory: “Judgments, within the powers vested in courts by the Judiciary Article of *440 the Constitution, may not lawfully be revised, overturned or refused faith and credit by another Department of Government.” Id. I see no valid reason why a court should be prohibited from giving advisory opinions to domestic branches of government and yet be permitted to issue advisory opinions to foreign sovereigns.
The Supreme Court has never given any indication that the bindingness concerns in Waterman could be cured by a court’s determination that the other entity was “likely” to follow its decision. While a judgment may in fact have a higher chance of eventually being binding on the parties where the foreign sovereign has acted cooperatively, the U.S. judgment remains “subject to later review or alteration by [foreign] administrative action” and -its bindingness remains — impermissibly—a question of probabilities.[5] See id. at 114, 68 S.Ct. 431.
IV.
The district court in this case did not have control of the res. The res is controlled by foreign sovereigns — New Zea-land and Hong Kong. Therefore, the district court could not in my view issue an order as to the res which would be binding against the world. Foundational Article III principles preclude the court from entering a forfeiture order against the res in this case. I would reverse the district court on this basis and deem the other issues presented by this appeal moot.

. Admiralty law indisputably requires control of the res as a prerequisite to the exercise of jurisdiction.

. None of the circuits to apply § 1355(b)(2) and cited by the majority considered challenges to the exercise of in rem jurisdiction based on Article III. The D.C. Circuit acknowledged that application of § 1355(b)(2) must conform with the Constitution, but declined any justiciability analysis because no claimant raised constitutional objections. United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Español de Credito, Spain, 295 F.3d 23, 27 (D.C. Cir. 2002) ("Unless the Constitution commands otherwise — and the claimant has raised no constitutional objections at all— the statute must be enforced.”).

.This is not to say that I am convinced by the majority's treatment of the redressability issue, ante, at 422-23. Lujan v. Defenders of Wildlife requires that it be "likely” and not *437 "merely speculative” that an injury will be redressed by a favorable decision of the court. 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quotation marks omitted). Both the district court and the majority concluded that the actions by the New Zea-land and Hong Kong courts to restrain the defendant res render it probable that those courts will enforce a judgment of forfeiture. Perhaps. I note, however, New Zealand's repeated disbursement of large amounts of the restrained assets even after the issuance of the forfeiture judgment, the revocation (and subsequent reimposition) of the restraining order by a Hong Kong court, J.A. 738-39, and an order by a New Zealand court.enjoining the registration of the U.S. forfeiture judgment, J.A. 2220.
Further — although this question may safely be left for another day — it seems to me that if a foreign sovereign were to refuse to cooperate, the probability that a § 1355 forfeiture judgment would redress the government’s injury might slip from "likely” to "speculative.” Such a refusal to cooperate by a foreign sovereign may deprive the government of standing to pursue the forfeiture action.

. The Supreme Court has similar concerns with regard to in rem jurisdiction, observing that when a defendant ship leaves a port and the plaintiff no longer has a res from which to collect, courts may find the judgment to be "useless” and not adjudicate the case based on a "traditional, theoretical concern[ ] of jurisdiction: enforceability of judgments.” Republic Nat’l Bank of Miami v. United States, 506 U.S. 80, 87, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992).

. It may be possible for the government to make a showing before the district court that the foreign sovereign would be compelled, by its own law, to give binding effect to a civil forfeiture judgment by a U.S. court. However, the government has made no such showing in this case sufficient to assuage Article III concerns.